# WILLIAM ARND vs. JOHN H. HECKERT.

*Seal Attached to Signature of Maker of Promissory Note—Action on Note Obtained by Fraud—Rights of Holder—Instructions to Jury.*

Under the Negotiable Instruments Law (Code, Art. 13, sec. 25), the addition of a seal to the signature of a maker of a note does not affect its negotiability.

A promissory note payable to one P. or order was obtained from the defendant as maker by means of fraudulent representations. In an action on the note by the plaintiff, the holder after endorsement, who was a resident of the State of Iowa, his evidence, taken under a commission, was to the effect that he bought the note in good faith, at a discount, from one Barker, who represented that the maker was responsible; that he did not know the payee and did not require an endorsement or guaranty by Barker, and did not present the note for payment in time to hold P. as endorser, and that he knew that Barker was a travelling seller of lightning rods. *Held*, that since the defendant had proved that the note was obtained from him by fraud, the burden was thrown upon the plaintiff to show that he was a *bona fide* holder thereof without knowledge or notice of any infirmity in its origin, and that the jury was at liberty to disregard his testimony, which was the only evidence offered to meet the burden of proof, if in their judgment it was unreliable.

*Held*, further, that the plaintiff is not entitled to have the jury instructed that there is no evidence legally sufficient to prove that the plaintiff purchased the note with knowledge of any fraud in its obtention or of any failure of consideration.

*Held*, further, that a prayer offered by the plaintiff is erroneous which instructs the jury that he is entitled to recover if they find that defendant signed the note and that the plaintiff became the holder of the same in due course, although they may also believe that it was obtained from the defendant by fraud or misrepresentation of third parties. This prayer submits to the jury a question of law in permitting them to determine what facts constitute a holder in due course.

*Held*, further, that the jury was correctly instructed that their verdict must be for the plaintiff if they find that the defendant signed the note sued on, and that the same was passed to the plaintiff for a valuable consideration before maturity, and that the plaintiff purchased the same in good faith, without notice of any fraud in its obtention or of any failure of consideration therein.

*Decided June 24th, 1908.*

Appeal from the Circuit Court for Allegany County (ROBERT R. HENDERSON, J.)

*Plaintiff's 1st Prayer.*—That there is no evidence in this case legally sufficient to prove that plaintiff took or purchased the single bill offered in evidence with knowledge of any fraud in its obtention, or of any failure of consideration therein. (*Rejected.*)

*Plaintiff's 2nd Prayer.*—The plaintiff further prays the Court to instruct the jury that if they find from the evidence that defendant signed the single bill offered in evidence, and shall find that plaintiff became the holder of said instrument in due course, then they must find for the plaintiff, even though they further find that said instrument was obtained from defendant by fraud and misrepresentations of third parties. (*Rejected.*)

*Plaintiff's 3rd Prayer.*—The plaintiff further prays the Court to instruct the jury that if they find from the evidence in the cause that defendant signed the single bill sued on in this case, and shall further find that same was passed to the plaintiff for a valuable consideration before maturity, and shall further find that plaintiff purchased said single bill in good faith without notice of any fraud in its obtention or of any failure of consideration therein, then their verdict must be for the plaintiff. (*Granted.*)

*Plaintiff's 4th Prayer.*—If the jury find from the evidence in the cause that the plaintiff purchased the single bill sued on for value, in good faith and before maturity, with no other knowledge than the single bill furnished on its face, then they must find that the plaintiff was a *bona fide* holder of said single bill, and no knowledge of fraud or want of consideration in the giving of said single bill subsequently acquired by him can affect his title as a *bona fide* holder for value. (*Granted.*)

*Plaintiff's 5th Prayer.*—That there is no evidence in this case legally sufficient to prove that the plaintiff took or purchased the single bill offered in evidence with knowledge of any fraud in its obtention or of any failure of consideration therin, and their verdict must be for the plaintiff. (*Rejected.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*J. W. S. Cochrane*, for the appellant.

*Robert H. Gordon* and *Wilbur V. Wilson*, for the appellee, submitted the cause on their brief.

PEARCE, J., delivered the opinion of the Court.

This is an action brought by the appellant against the appellee upon the following instrument of writing:

"May 4th, 1908.　Allegany County, Maryland.

$100.00.　Three months after date I promise and bind J. H. Heckert, heirs, executors, etc., to pay to R. B. Parks or order one hundred dollars for value received, bearing interest from date, at the rate at 6 per cent per annum, and hereby waive the benefit of the Homestead exemption, or any other law, that is now or may hereafter be enforced to prevent the collection of the same, and further agree to pay all attorney's fees for collecting, if collected by suit.

　　　　　　　　Witness——hand and seal this 18th day of April, 1906.

P. O. Pinto, Md.　　　　　　　　　　　J. H. Heckert (Seal)

　　　　　　　　　　　(Witness)　　E. C. Heckert (Seal)

Under the Negotiable Instruments Act, Code, Art. 13, sec. 25, the addition of a seal to the makers signature does not affect the negotiable character of this obligation, which was endorsed in blank by R. B. Parks and subsequently passed into the hands of the appellant.

The declaration set out the obligation in full, and alleged that it was executed by Heckert and delivered by him to Parks, "and that the said R. B. Parks indorsed said bill obligatory, and the same was passed to plaintiff who is the holder thereof," and that no part of the money secured thereby had been paid.　The suit was brought in July, 1907.　The defendant pleaded, never indebted as alleged; never promised as alleged, and also that the obligation is a false and fraudulent paper, and that the plaintiff took it well knowing it to have been obtained by fraud, and that it was not a good and valid obligation at the time he took the same.

Issues were duly joined, and at the trial the plaintiff offered evidence tending to prove the due execution of the instrument,

and that the services of the plaintiff's attorney in the case were worth $25, and then offered the instrument in evidence, and rested.

The defendant then proved by himself and his son that at the time he signed the paper, two men representing themselves to be R. B. Parks, the payee therein, and William Barker, came to him, claiming to be agents of the Franklin Insurance Company of St. Louis, Missouri, and promised to get him a ten-year policy in that company, if he would sign a note for $100 and that the policy would be delivered in about ten days, but that the company would not insure the barn unless a lightning rod was put up, and that he then paid them $10 in cash to put up a lightning rod 85 feet long, which they did within three-quarters of an hour, and as soon as the paper was signed they hurried away; that he never received any policy of insurance, and was unable to ascertain anything about the insurance company named, and that he had never seen or heard anything of Parks or Barker, except that the note was sent on for collection.

The defendant also proved by Mr. D. Lindley Sloan, an attorney, that during the term of Court in April, 1906, a man claiming to be William Barker, and to be from Council Bluffs, Iowa, came to him wishing him to identify him; and that immediately after this he heard the Sheriff was looking for William Barker. The plaintiff's own evidence, *taken under a commission* in Council Bluffs, Iowa, was offered in rebuttal. It appears therefrom that he is a resident of that city, and engaged in the real estate and loan business; that he purchased the note in question, May 4th, 1906, at Council Bluffs for $90, and he testified in chief, that he had no knowledge but what the note was a *bona fide* obligation given for a valuable consideration, and had no cause to believe there was or would be any defense thereto.

On cross-examination he said that at the same time he purchased this note he purchased a note of S. C. Morgan and one of Henry North all from William Barker, paying for all in cash, and discounting each note $10; that he knew nothing of any of the

makers of these notes except that Barker said they were respon-
sible men; that he did not know R. B. Parks at all—had never
seen him, did not know where he lived, or anything about
his financial responsibility.  Upon the return of this commis-
sion, it was by order of Court remanded that the plaintiff
might answer certain additional interrogatories upon cross-ex-
amination. · He then testified that in the last two or three
years he had purchased from William Barker notes to the
amount of two or three thousand dollars; that he had known
Barker over twenty years, that he was in the real estate busi-
ness and was worth $20,000 to $25,000, city property and
farms; that he traveled a good deal, but that his residence
was in Council Bluffs and he had seen him that morning;
that he did not know whether Barker knew Parks, and that
Barker never told him who Parks was, or what his business
was, nor where he, Barker, got the note; that he did not re-
quire Barker to indorse the note, because he relied upon his
representation that Heckert was good for it; that he was
not loaning money to Barker on the note as collateral, and
that Barker did not promise ·to repay him if the note was
not paid; that he kept accounts in three banks, and was the
president of one of these banks, but paid in cash for all the
notes mentioned; that he was worth $25,000 above all liabili-
ties, in real estate, bank stocks, notes and cash on deposit,
and in his safe.  He also admitted he had heard that some
years ago Barker was in the lightning rod business.

The plaintiff then offered five prayers which will be set out
by the Reporter.  The Court granted the third and fourth
prayers, and rejected the first, second and fifth.  No prayers
were offered by the defendant, so that the single exception
is to the rejection of the first, second and fifth prayers.  The
two prayers granted by the Court are the same which were
approved by this Court in *Totten* v. *Bucy,* 57 Md. 446, a case
of the same character as the one now before us, and in our
opinion they gave the plaintiff all the law to which he was
entitled.  The fraud in this case on the part of Parks and
Barker is gross and transparent, and the evidence tending to

prove that the plaintiff did not take the note in good faith and without notice of facts tending to show fraud in its obtention is abundant if not overwhelming. The suspicious circumstances are too numerous and glaring to be consistent with any rational theory of the good faith and innocence of the plaintiff in this transaction. Without enumerating them all, we may mention, the absolute want of knowledge of the financial worth of the maker, a thousand miles from the plaintiff in another State; the absolute want of knowledge of who Parks was or what was his worth; the failure to present the note in time to hold Parks as indorser; the failure to require the indorsement of Barker; the heavy discount charged; the neglect to have Barker testify as to the facts attending the obtaining of the note, though the plaintiff had seen him the same morning his own testimony was given, his confession that he had heard Barker had been engaged in the lightning rod business which, to an ordinarily prudent and intelligent man, has almost come to be a badge of fraud, at least as to these peripatetic artists in that line; and the extent to which he dealt in securities of this description. It is impossible to believe that a shrewd business man, and a bank president of any experience, could have engaged in good faith in such transactions as this, and on the scale shown by his own testimony. The inference is almost irresistible that there was some secret undisclosed connection between Parks, Barker and the plaintiff, through which he participated in the fruits of their fraud.

In *Williams* v. *Huntington*, 68 Md. 598, the Court in commenting upon the duty of the plaintiff in such a case to establish by proof that he was a *bona fide* holder without knowledge or *notice* of any infirmity in its origin or transfer, used this language: "In discharge of the burden thus cast upon him he offered his own testimony, and none other. Its credibility was wholly for the jury to determine. They were at liberty to disregard it altogether, if in their judgment it was intrinsically improbable, or if it was stamped with, or inherently furnished, indications of its unreliability;" and this lan-

guage is especially applicable to the present case.   No Court could, in the face of all the facts here in evidence, have granted the first prayer which sought to take the defense of fraud from the jury, and it was defective moreover in not including *notice* as well as *actual* knowledge of fraud in the obtention of the note.   *Griffith* v. *Shipley*, 74 Md. 591; *Valley Savings Bank* v. *Mercer*, 97 Md. 478.

The second prayer was properly rejected.   It submitted to the jury a question of law, in permitting them to determine what facts constitute "holder in course."   The third prayer, which was granted, correctly and clearly instructed the jury upon that question.

The fifth prayer was properly rejected for the same reasons given as to the first prayer.

In such cases it is the duty of the Court to hold those who deal in securities obtained as these were, to a rigid requirement as to the proof of absolute good faith in the transaction, and to guard juries against any misleading phraseology in the instructions, as far as possible.

> *Judgment affirmed with costs to the appellee above aad below.*