# EDWARD G. EDELEN ET AL.

## vs.

## FIRST NATIONAL BANK OF HAGERSTOWN.

*Promissory Note—Purchase in Good Faith—Burden of*
*Proof—Instructions—Evidence.*

That a bank purchasing promissory notes was truthfully
told that they were given for stock in an oil company is not
sufficient to impute to the bank notice that the notes were
obtained by fraud.                                    p. 418

The omission, by one purchasing a negotiable instrument,
to inquire in regard thereto of the bank at which by its terms
it is payable, does not affect the position of the purchaser as
a holder in due course.                               p. 418

That, by section 78 of the Negotiable Instruments Act,
when it is shown that the title of any person who has nego-
tiated the instrument is defective, the burden is imposed on
the holder to prove that he, or some person under whom he
claims, acquired the title as a holder in due course, does not
preclude the court from determining whether, in a particular
case, the evidence is legally sufficient to justify the inference
that the plaintiff had knowledge of an infirmity in a note, or
acted in bad faith in acquiring it.                   p. 419

The effect of the statutory transfer to the plaintiff of the
burden of proof upon a question of this nature is to make it
incumbent upon him to prove the circumstances under which
he acquired the instrument, but if the evidence thus offered is
uncontradicted, and the circumstances proved do not admit of
a rational inference of knowledge or bad faith on the part of
the plaintiff, the court may rightfully so instruct the jury.
                                                      p. 419

The mere denial of knowledge by the plaintiff does not enti-
tle him to an instruction in his favor on the issue of good
faith, but the circumstances under which he took the note,

and which he has the affirmative to prove after its fraudulent origin has been shown, must be wholly consistent with the theory that he was not guilty of bad faith in its acquisition.

p. 419

That, after the maturity of the notes in suit, the president of plaintiff bank offered to see that the defendants would receive the stock for which the notes were given, did not tend to show that plaintiff, when it accepted the notes, knew that the stock had not been delivered.                      p. 420

On an issue as to the good faith with which plaintiff bank accepted the notes in suit as collateral for a loan, evidence that the bank subsequently investigated the value of oil company stock pledged with the bank by the same person as collateral for another loan; that, after the notes became due, the bank inquired as to the defendants' financial standing; or that the account of the pledgor of the notes was allowed by the bank to be overdrawn after the making of the loan for which they were pledged, was immaterial, and was properly excluded.

pp. 420, 421

*Decided November 16th, 1921.*

Appeal from the Circuit Court for Montgomery County (PETER and WORTHINGTON, JJ.).

Action by the First National Bank of Hagerstown against Edward G. Edelen and Benjamin M. Edelen. From a judgment for plaintiff, defendants appeal. Affirmed.

The cause was argued, together with that next following, before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*L. Allison Wilmer* and *Robert B. Peter,* with whom were *Mitchell & Digges* on the brief, for the appellants.

*Harvey R. Spessard* and *Thomas L. Dawson,* with whom were *Henry F. Wingert, Ferdinand C. Cooksey* and *Dawson & Dawson* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The principal question in this case is whether the court below erred in granting a prayer which instructed the jury that the plaintiff bank was entitled to recover the amount of the two promissory notes sued on if they were signed and indorsed by the defendants and were delivered to the plaintiff for a valuable consideration before maturity, and if the plaintiff, at the time it acquired the notes, had no notice of any fraud in their obtention or any failure of the consideration therefor, and then concluded with the statement that there was no evidence in the case legally sufficient to show that the plaintiff had any knowledge or notice of such fraud or failure of consideration. It is to the concluding portion of the instruction that the defendants object. They contend that the trial court was not justified in thus disposing of the question as to whether the plaintiff took the notes with notice of their proven infirmity. The verdict and judgment being in the plaintiff's favor, the defendants have appealed.

The two notes on which the suit is based are identical in amount and terms. Each is dated "Leonardtown, Md., January 18, 1919," is for the sum of seven hundred dollars and is payable four months after date "to the order of myself." They were made "Negotiable and Payable at the First National Bank of St. Mary's, at Leonardtown, Md." The defendants signed the notes both as makers and indorsers. As thus executed they were delivered to a certain J. C. Gordon in substitution for notes which he had obtained from the defendants about a month previously for two hundred shares of the capital stock of the Wright Producing and Refining Company sold to each of them at that time. The stock was not delivered and the notes which those in suit were intended to replace were never returned. On March 10. 1919, all of the notes referred to were pledged by Gordon to the plaintiff, the First National Bank of Hagerstown, Maryland, as collateral security for a loan of $500. As additional security two notes of other persons for amounts aggregating $1500

were pledged. A week later Gordon procured from the bank a further loan of $3500 on the collateral already furnished, to which he added four hundred shares of stock of the Wright Producing and Refining Company.

The proceeds of the loans were used in the purchase of a restaurant business in Hagerstown, for which Gordon had contracted some time before his application for the loans, and when he acquired title to the restaurant he gave the bank a chattel mortgage on the stock and fixtures as additional security for his indebtedness. Prior to the first loan he was operating the restaurant while he was awaiting a transfer of the title. He was a depositor with the bank for some weeks before he asked for a loan, and he exhibited to its officers several deposit books of other banks showing substantial credits in his favor.

The transactions relating to the loans for which the defendant's notes were pledged as collateral were conducted on behalf of the bank by its president and cashier. The testimony of those officers shows that they accepted the notes in the usual course of business as collateral security for the loans described, for which only the legal rate of interest was charged, and that they had no knowledge as to the circumstances under which the notes were obtained from the defendants. They were informed by Gordon that the notes had been given for oil stock, and they were assured by him that the makers and endorsers were financially responsible. It was testified by the president that one of the motives for making the loans was to secure deposits for the bank from the restaurant business to the purchase of which the proceeds of the loans were to be applied. Deposits were subsequently received by the bank from that source for a time, but Gordon left Hagerstown towards the end of the year and the restaurant was sold under the bank's chattel mortgage.

It is not disputed that the notes involved in this suit were obtained by fraud, and that the title of the person who pledged them with the bank was defective, within the mean-

ing of the Negotiable Instrument Act (Code, art. 13, sec. 74). Under such conditions the following provisions of the act are applicable.

"Every holder is deemed *prima facie* to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course." (Section 78.)

"A holder in due course is a holder who has taken the instrument under the following conditions: 1—That it is complete and regular on its face. 2—That he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact. 3—That he took it in good faith and for value. 4—That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." (Section 71.)

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." (Section 75.)

In this case the plaintiff unquestionably acquired the notes before maturity and for value. The only inquiry is whether it accepted them without knowledge of the fraud in their origin or of such facts as would subject it to the imputation of bad faith in the transaction.

The circumstances under which the notes were presented to the bank were not such as to create a doubt as to their validity. They were offered by a known patron of the bank as part of the collateral security for moderate loans made in

the customary way, and intended and used for the purposes
of an investment in a local enterprise. The fact that they
were truthfully said to have been given for stock in an oil
producing and refining company was certainly not sufficient
to raise an inference that they were obtained by fraud. In
their testimony as to the fraud actually committed, the de-
fendants did not refer to the value of the stock but com-
plained of its non-delivery. It is suggested that inquiry in
reference to the notes should have been made of the Leonard-
town bank, where by their terms they were made payable.
But the omission to make such an inquiry could hardly be
held to affect the position of the plaintiff as a holder in due
course. The designation in a promissory note of a bank at
which it is to be presented for payment at maturity does not
indicate that information will be available there as to the
circumstances under which the note was executed. There
is nothing in the record to support the theory that the plain-
tiff's officers designedly refrained from seeking independent
information as to the origin of the notes offered in this in-
stance. The proof wholly fails to prove the existence of con-
ditions which might have imposed the duty upon the bank
to make such an investigation. Under the plain terms of
the law, it is entitled to the rights of a holder in due course
unless it had "actual knowledge of the infirmity" in the
notes, or "knowledge of such facts that its action in taking
the notes amounted to bad faith." There is no reason in the
evidence for the conclusion that the plaintiff was possessed
of such knowledge. No rational inference can be drawn from
the record that the plaintiff actually knew of any fraud, or
failure of consideration affecting the notes, or was cognizant
of any facts on account of which its good faith in the trans-
action could be denied. In view of the conclusion just stated,
the instruction we are considering must be approved, unless a
contrary ruling is required by the provision already quoted,
that "the burden is on the holder to prove that he, or some
person under whom he claims, acquired the title as a holder

in due course" when it has been "shown that the title of any
person who has negotiated the instrument is defective." If
the existence of such a burden of proof, under the condi-
tions mentioned in the act, is incompatible with the exercise
of authority by the court to determine whether in a particular
case the evidence is legally sufficient to justify the inference
that the plaintiff had knowledge of an infirmity in the note,
or acted in bad faith in acquiring it, then it would be neces-
sary to hold that the instruction in question should not have
been granted. But we do not understand the law to have that
effect. In the case of *Valley Savings Bank* v. *Mercer,* 97
Md. 458, the right of the court to pass upon the legal suffi-
ciency of the evidence on such an issue was distinctly recog-
nized, and an instruction was approved which was virtually
identical in terms with the one now under review. The effect
of the transfer to the plaintiff of the burden of proof upon a
question of this nature is to make it incumbent upon him to
prove the circumstances under which he acquired the instru-
ment upon which he seeks to recover. If the evidence thus
offered is uncontradicted, and the proven circumstances do
not admit of a rational inference of knowledge or bad faith
on the part of the plaintiff, the Court may rightfully so in-
struct the jury. To adopt the contrary view would mean
that in every suit by an indorsee of a negotiable instrument,
affected by some original infirmity, the question as to whether
the plaintiff acted in bad faith would have to be submitted to
the jury, no matter how conclusively his good faith may be
proven by the uncontradicted evidence. It is not the mere
denial of knowledge by the plaintiff that entitles him to an
instruction in his favor on such an issue. But the circum-
stances under which he took the note, and which he has the
affirmative duty to prove after its fraudulent origin has been
shown, must be wholly consistent with the theory that he was
not guilty of bad faith in its acquisition. This is the theory
upon which the decisions of this Court in such cases have uni-
formly proceeded. In the cases in which proposed instruc-

tions as to the legal insufficiency of the evidence to prove bad
faith on the part of the plaintiff were disapproved, the reason
assigned for such a ruling was not simply that the burden of
proof was on the plaintiff as to that issue, but that there were
circumstances from which bad faith could be inferred.
*Totten* v. *Bucy,* 57 Md. 446; *Williams* v. *Huntington,* 68
Md. 591; *Griffith* v. *Shipley,* 74 Md. 599; *Cover* v. *Myers,* 75
Md. 406; *McCosker* v. *Banks,* 84 Md. 297; *Arnd* v. *Heck-
ert,* 108 Md. 300.

Upon the undisputed facts of the present case the instruc-
tion to which we have referred was properly granted.

The cases cited in opposition to the view just expressed
were very different from the one now being decided. Special
reliance was placed upon the cases of *Canajoharie Nat. Bank*
v. *Diefendorf,* 123 N. Y. 191; *Arnd* v. *Aylesworth,* 145 Iowa,
195, and *Griffith* v. *Shipley, Cover* v. *Myers,* and *Arnd* v.
*Heckert, supra.* Each of those cases involved conditions
which gave support to the inference of bad faith in the plain-
tiff's acceptance of the negotiable instrument on which the
suit was instituted. In the pending case no such conditions
are presented.

The prayers offered by the defendants were properly re-
fused, as they were in conflict with the plaintiff's granted
prayer which we have approved.

Six exceptions were taken to rulings on the admissibility
of testimony. The first was to the refusal of the court to
allow the defendants to prove that, some time after the ma-
turity of the notes sued on, the president of the plaintiff bank
offered to see that the defendants would receive the stock
for which the notes were given, if they were paid. This did
not tend to show, as the defendants suggested, that the plain-
tiff knew, when it accepted the notes, that the stock for
which they were given had not been delivered, it appearing
from the defendants' testimony that they had themselves fur-
nished this information to the plaintiff, after the notes ma-

tured and before the president of the bank made the proposal
to which the exception refers.

The second and third exceptions related to the exclusion of
evidence offered by the defendants as to their ownership of
property.   A question asked, and disallowed, in the cross-
examination of the president of the bank in regard to his sub-
sequent investigation as to the value of the oil company stock
pledged with the bank as collateral, forms the basis of the
fourth exception.   The two remaining exceptions refer to re-
jected offers to prove that, after the notes became due, the
bank made inquiries as to the defendants' financial standing,
and that the account of Gordon was allowed to be overdrawn
during the period subsequent to the loans for which he
pledged the notes as collateral security.   The proffered testi-
mony to which the five last noted exceptions relate was clearly
immaterial.

There was no error in any of the rulings.

*Judgment affirmed, with costs.*