## CENTRAL STATE BANK *v.* ZELLI.

1. BILLS AND NOTES—FRAUD—HOLDER IN DUE COURSE—BURDEN OF PROOF.

   Where payee shows that he was tricked into indorsing checks, and that they were taken from him without his knowledge, burden shifts to holder to show that he acquired title as holder in due course (2 Comp. Laws 1929, § 9308).

2. SAME—HOLDER IN DUE COURSE.

    Evidence *held*, insufficient to sustain burden of proof that holder of checks was holder in due course.

Appeal from Jackson; Williams (Benjamin), J. Submitted June 15, 1932. (Docket No. 159, Calendar No. 35,980.) Decided October 3, 1932.

Bill of interpleader by Central State Bank, a Michigan corporation, against S. Zelli and Vasil Dioss to determine ownership of fund represented by cashier's checks. Decree for defendant Dioss. Defendant Zelli appeals. Affirmed.

    *M. F. Badgley,* for defendant Zelli.

    *Harry E. Barnard,* for defendant Dioss.

    NORTH, J. This is a bill of interpleader filed to secure an adjudication as to which of the two defendants is entitled to the proceeds of two cashier's checks, each in the sum of $900. Each of the defendants appeared, each filed an answer and cross-bill claiming the fund. The defendant Vasil Dioss had a decree in the circuit court, from which defendant S. Zelli has appealed.

    In September, 1927, defendant Dioss, preparatory to a trip to Europe, purchased from plaintiff bank the two cashier's checks, each payable on demand to himself. His ultimate European destination was Macedonia, where his family resided. For a number of years he had worked as a cook and waiter in a restaurant in Jackson, Michigan; and, as the facts hereinafter recited disclose, he appears to have been somewhat inexperienced in the ways of the world. En route Dioss stopped in Paris. He still had in his possession the two checks and a considerable

sum of money.  He there made the acquaintance of two men with whom he visited various places of interest and amusement.  Evidently they learned that Dioss had the checks in his possession.  They induced Dioss to indorse these checks, and by means of a trick, the details of which need not be recited, they obtained possession of the checks without Dioss' knowledge just as he was about to leave Paris in continuation of his journey.  The other defendant, S. Zelli, at the time was operating a restaurant in Paris.  He claims he cashed these two checks for one S. Norman, whom he had known for eight or ten years as a dealer in antiques and an American citizen who stopped at the Grand Hotel at Paris. Zelli's testimony was taken by deposition, wherein he states that on several occasions he had cashed checks for Norman, that he considered him a man of means, honorable, and that he was a customer of Zelli's restaurant.  Zelli claims that Norman indorsed the two checks in the restaurant about 11:30 p. m. on a holiday when all banking institutions were closed; that he (Zelli) cashed the checks for Norman, paying therefor in French francs the face value, less exchange.  In this connection it is Zelli's claim that he took these checks in good faith, without notice of any infirmity therein or of any defect in the title of Norman, and also without any detailed information as to how or under what circumstances the latter obtained them.  Zelli had never seen Dioss, and had no knowledge whatever concerning him, but Zelli was informed by Norman that Dioss indorsed the papers in his (Norman's) presence.  Zelli forwarded the checks for collection, but in the meantime payment had been stopped by Dioss.

The circuit judge filed in this case a very full and helpful opinion. We quote it in part:

"The court is satisfied from the testimony, and therefore finds that Dioss, the original payee in the cashier's checks never intentionally delivered the same to anyone after indorsing them; that the two purported friends he met in Paris were confidence men, intent on fleecing Dioss; that they secured his indorsement of the checks by duress; and that after such indorsement, they stole the checks from his person.

"This is a sufficient showing under section 61, Michigan negotiable instruments law (2 Comp. Laws 1929, § 9308), to shift the burden to the holder, Zelli, 'To prove that he or some person under whom he claims acquired title as a holder in due course.' See, also, *Horrigan v. Wyman*, 90 Mich. 121, which holds:

" 'After proof by the maker that a promissory note sued upon by an alleged innocent holder was fraudulently obtained of the payee by a prior transferee, the burden of proof is upon the plaintiff to show that he is a *bona fide* holder for value.' * * *

"As to the 3d and 4th requisites (2 Comp. Laws 1929, § 9301) of good faith and lack of notice of defect of title, it is necessary to consider all of the facts and circumstances surrounding the transaction in question, to weigh the testimony of Zelli carefully, and to determine what if any inferences are to be drawn from all the attending circumstances.

"Let us consider Zelli's version of the transaction. In the court's experience, it would seem a highly unusual and unreasonable proceeding to suggest to a restaurant keeper at almost midnight on a holiday, even though he were an acquaintance, that he cash for you two drafts aggregating $1,800 with no explanation whatever, so far as the testimony discloses, as to why *both* drafts should be cashed in a manner so out of line with ordinary business practice. Why would Norman, if a man of means, go

to a restaurant keeper for financial accommodation rather than the hotel where he lived, and why did he need $1,800 all at once and in such a hurry? Consider whether Zelli's story is reasonable and probable as to having readily available in his restaurant at the time claimed the sum of $1,800 in currency; whether if he did have and withdrew it from the safe or cash drawer, some other person, cashier or custodian would not have been cognizant of such withdrawal, the amount thereof, how the bookkeeping was handled with reference to the transaction; who was present, if anyone, or no one, what was actually said by the parties and whether or not such a person as S. Norman ever existed or in fact indorsed the checks.

"The information on these and similar questions that may readily occur to the seeker after the real facts is all within the knowledge of Zelli, if his story is the whole truth, yet he produces no witness except himself, gives only the barest details, and much of his evidence consists of categorical answers to interrogatories which are highly suggestive and obviously framed to bring the case within the letter of our negotiable instruments act.    *    *    *

"At the risk of repetition, the court, from a purely practical standpoint, cannot conceive of himself or any ordinary business man, either asking to have checks of such a large amount cashed under such peculiar circumstances or on the other hand, of being willing to cash checks of such amount and under like circumstances, if so requested to do.

"The court finds that all these suspicious circumstances, when taken together, give character and color to the question under inquiry to such an extent that the court is not convinced by the evidence that Zelli acted in good faith in the transaction, and believes moreover that reasonable men might well take the same view of the entire situation."

Consideration of this record fully satisfies us that the determination of the circuit judge of the issue

of fact presented was correct. The testimony is not satisfying that appellant acted in good faith. The following cases present somewhat similar issues, though of course the facts differ: *Goodrich* v. *McDonald,* 77 Mich. 486; *Republic National Bank* v. *Bobo,* 227 Mich. 6.

"It is not the mere denial of knowledge by the plaintiff that entitles him to an instruction in his favor on such an issue. But the circumstances under which he took the note, and which he has the affirmative duty to prove after its fraudulent origin has been shown, must be wholly consistent with the theory that he was not guilty of bad faith in its acquisition." *Edelen* v. *Hagerstown First National Bank,* 139 Md. 413, 419 (115 Atl. 599).

The decree entered in the circuit court is affirmed, with costs to appellee.

CLARK, C. J., and MCDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.