E. JAY FERDINAND AND PHYLLIS C. FERDINAND, PLAIN-TIFFS-RESPONDENTS, v. AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, A CORPORATION, DEFENDANT-APPELLANT.

Argued October 1, 1956—Decided November 5, 1956.

*Mr. George I. Janow* of the New York Bar argued the cause for the appellant (*Mr. Samuel Dreskin,* attorney and of counsel).

*Mr. Frederick C. Vonhof* argued the cause for the respondents (*Mr. Albert M. Neiss,* attorney).

The opinion of the court was delivered by

VANDERBILT, C. J. This is an appeal from the judgment of the Appellate Division of the Superior Court affirming the judgment of the Law Division, entered by the direction of the trial court in favor of the plaintiffs when the defendant rested without offering any testimony at the end of the

plaintiffs' case. We granted certification, 21 *N. J.* 550 (May 21, 1956).

The action was brought to recover $11,775 under a jewelry-fur floater policy issued by the defendant insurance company to the plaintiffs. Seven of the ten items of jewelry covered by the policy were allegedly stolen from the plaintiffs' automobile while parked overninght at a motel in Dancia, Florida. The jewelry was specifically described in a schedule attached to the policy and a dollar value was set opposite each item. A jewelry expert had appraised five of the seven lost articles of jewelry in 1953 for the purpose of obtaining the insurance. The values set forth for these items in the policy are the values as they appeared on the written appraisal of the jewelry expert made at that time. The policy was issued May 4, 1953 and provided that the property was insured "against all risks of loss or damage * * * while in all situations" with certain exceptions which have no material bearing on the issue before us.

The plaintiffs' case consisted of their own testimony and that of a jewelry expert and a deputy sheriff of the county where the alleged robbery took place. The plaintiffs' testimony was uncontroverted. They established that on February 12, 1954 they left their home in Millburn, N. J., on a trip to Florida and that they arrived in Dancia on the evening of February 14. There they stopped at the Suburban Motel, parked their car about 40 or 50 feet from the window of their room, locked it and retired for the night at about 10 P. M. The following morning, at about 8 A. M., the plaintiff E. Jay Ferdinand went to the car and discovered that a hole about 3 inches in diameter had been broken in the right-hand front window, large enough for someone to reach inside and release the lock. The contents of the car were "upset and disarrayed." Their jewelry case had been ripped apart and some of it was on the front seat and some on the floor. The contents had been dumped and strewn about. He called to his wife and then ran to the motel office to tell them what had happened and to call the police. A deputy sheriff responded to the call and

proceeded to make an investigation and it was then discovered, in addition to the damage already noticed, that the bottom of the glove compartment in the car had been torn out. While the deputy sheriff was there, this plaintiff took a camera from the trunk of the car and took photographs of the interior of the car and of the broken window. These photographs were received in evidence.

The testimony of the plaintiffs regarding the condition of the car was substantially corroborated by that of the deputy sheriff who responded to the call and by the photographs taken by the plaintiff.

The defendant cross-examined the plaintiffs extensively with respect to their direct testimony concerning the events of the alleged robbery and also with respect to the purchase of the jewelry. We refer only to those facts amplified on cross-examination that have aroused our doubts.

On the night previous to the alleged robbery, Mr. Ferdinand testified that he put his $400 gold "Jules Jergenson" wristwatch into the jewelry box and then returned the box to the rear seat of the car before retiring. From the testimony the watch apparently stayed in the box along with the other jewelry all the next day and was left there on the rear seat of the car, while he and his wife slept at the motel in Dancia.

The thief was seemingly a person of discriminating tastes. In the dark of the night he or she took time to select the most valuable pieces of jewelry leaving the less valuable items of costume jewelry virtually intact, only disarrayed.

Subsequent to the event the plaintiffs were interviewed in Florida by a representative of the insurance company. During the course of that interview they signed a statement indicating that they didn't "believe" that "any of the inexpensive costume jewelry [was] missing"; that "nothing [was] taken that was uninsured;" and that they did not "own any valuable articles of jewelry not involved in the loss." At the trial they testified that after they returned home, they discovered some of the costume pieces were missing and some valuable pieces which were not insured were gone. It also appeared that another of the statements made by the

plaintiffs to the insurance company was inaccurate; the policy covered ten items of jewelry and only seven of them are claimed to have been stolen.

Other facts also appear which, when considered with these circumstances, raise doubts. The plaintiff E. Jay Ferdinand has had some legal training. He had worked as an adjuster for various insurance companies and also as a jewelry salesman. He was also an insurance broker and in fact was also the agent who wrote the policy under which he is now claiming. He testified that he had no knowledge of what evidence would be necessary to prove his loss, nevertheless he undertook to document the physical conditions with the camera he carried in his car trunk. His experience could have dictated, after a more mature reflection, that his original story to the insurance company representative that nothing but insured pieces were taken was somewhat incredible and that it would be more believable if some of the other pieces of jewelry, valuable or costume, were taken.

Further, it appears that all the insured jewelry that was taken was purchased for cash or taken in trade for other jewelry, without receipt and some of it from peddlers on the Bowery in New York City.

The same jewelry expert who had given the appraisal upon the inception of the policy testified as to the value of the jewelry at the time of the issuance of the policy and at the time of the loss. This testimony likewise remained uncontroverted.

At the conclusion of the plaintiffs' case, the defendant rested without offering any evidence. The trial judge denied the plaintiffs' motion for a judgment in their favor as a matter of law under R. R. 4:51 (a directed verdict), and said he would let the case go to the jury. He then recessed for luncheon. When the court reconvened, he stated that during the noon recess he had reviewed the testimony and wished to hear further argument on the plaintiffs' motion for a directed verdict. Thereafter, in rendering an oral opinion in which he held that the plaintiffs were entitled to a judgment for $11,775 and interest, he said:

"I find from the evidence in this case that there is nothing from which a jury could draw a reasonable inference that the plaintiff did not own the seven specific articles claimed to have been stolen.

I further find there is nothing in the evidence which would permit the jury to draw a reasonable inference that the articles were not stolen from the automobile on the night of February 14 or the morning of February 15 and there is no evidence from which a jury could draw a reasonable inference that the values testified to by the plaintiff Mr. Ferdinand, or by an independent witness, Mr. Kerber, was other than that stated."

The Appellate Division of the Supreme Court affirmed, 40 *N. J. Super.* 1 (1956), holding that "there were no facts or circumstances from which a jury could draw an inference" that the jewelry was not stolen, that "from the uncontroverted proofs the trial court quite properly directed a verdict in the plaintiffs' favor," and that "there was no evidence nor inference to be drawn from the proven facts upon which a jury verdict in favor of the defendant could have been based" and that "any verdict in favor of the defendant would necessarily have been bottomed solely upon mere conjecture or hypothesis not supported by the evidence, and if such a verdict had been rendered, the court would have been justified in setting it aside and entering a judgment for the plaintiffs."

True it is that there were no conflicting inferences which could be drawn from the facts as they were testified to by the plaintiffs and their witnesses. But we cannot agree that a verdict in favor of the plaintiffs here is the inevitable result.

█ An inference is a deduction or conclusion that can be drawn only from a premise established by the proofs in the case, *State v. Harrington,* 87 *N. J. L.* 713, 716 (*E. & A.* 1915), *Chambers v. Hunt,* 18 *N. J. L.* 339, 354–5 (*Sup. Ct.* 1841), *Bouvier's Law Dictionary* (*Baldwin's ed.* 1926) 545.[1] The uncontradicted testimony and proofs here would indicate that the plaintiffs' insured jewelry was in their jewelry case locked in their car, that someone broke the window of the car near the lock switch, someone disarrayed the contents including the jewelry case and that some of the pieces of jewelry in the case were missing. The obvious

---

[1] Rawle's Third Revision, p. 1562.

inference dictated by these facts is that the plaintiffs' insured jewelry was taken from the plaintiffs. Any doubt of that as the ultimate fact must come about only as a result of disbelief or of a failure of the stories told to persuade because they are credibly unconvincing, and not as a result of any conflicting inferences drawn from the proofs that the facts are other than as related. That doubtful condition results in a failure of proof rather than in the establishment of the claim and then a defeat of it by the existence of ultimate factual circumstances other than as indicated by the testimony, see 9 *Wigmore on Evidence* (*3d ed.*), *section 2487, pp. 278–280*. The only factual possibilities other than as narrated by the plaintiffs are that the insured jewelry was not stolen, even though there was an actual theft of something from the car or at least an unlawful entry of the car by someone, or that a taking of the insured jewelry actually occurred but was perpetrated by the plaintiffs themselves or by someone acting in collusion with them. But these are not inferences that could be drawn from the facts in the record because there is absolutely no evidence that could reasonably give rise to such conclusions. In theory then, and purely so, if the jury here should have returned a verdict based upon one of these other definite possibilities it would have been improper and based upon pure conjecture; but if the matter had been submitted to the jury and it returned a verdict for the defendant because it had not been persuaded of the plaintiffs' claims, we see no basis for error in the circumstances of this case. The crux of the case lies, therefore, in the realm of credibility—are the plaintiffs telling the truth and are they to be believed in what they say? As we will subsequently demonstrate, in certain circumstances the jury must be given the opportunity to determine the genuineness of the plaintiffs' claim generally on the basis of credibility, while in other instances it is for the court to do so, not as a matter of law as has so often been said, but as a matter of reason and logic.

The simple questions thus to be resolved are—(1) When is it for the jury alone to evaluate the credibility of the

plaintiffs and their witnesses and when is it within the province of the trial court to do so; (2) and in the circumstance here was the action of the trial judge proper?

The plaintiffs in support of their judgment urge that when, as here, all the material evidence is uncontroverted and such evidence reasonably permits of but one conclusion, namely, that they were the owners of the jewelry in question, that it was lost under felonious circumstances covered by the policy and that it was worth what they claimed, then they have susained their *prima facie* burden of proof and without more from the defendant are entitled to a judgment, citing *R. R.* 4:51, *Mortgage Corp. of N. J. v. Aetna Cas. & Surety Co.,* 19 *N. J.* 30, 40 (1955), *Yannuzzi v. U. S. Casualty Co.,* 19 *N. J.* 201, 212 (1955). Their assertion cannot be considered as an erroneous expression of the rule of law, but it has no application in the facts of this case.

In support of the appeal, the defendant urges that the testimony offered by the plaintiffs, though uncontroverted, was not conclusive because the testimonial trustworthiness of the witnesses, *i. e.* their credibility, was in issue and therefore a matter for the jury and not for the court to decide. It also contends in this case particularly, where all of the facts were peculiarly and exclusively within the sole knowledge of the plaintiffs, the court was required to submit the case to the jury, else policyholders could recover in every case where the insurance company lacked knowledge of the facts. The defendant cites in support of its position *Bowen v. Healy's Inc.,* 197 *A.* 655 *(Sup. Ct.* 1938) (not officially reported), where the court said at *page* 658:

"It must always be apprehended that it is preeminently the mission of the jury to resolve the credibility of the testimony of the witnesses; * * *."

*Ravitz v. Chirelstein,* 135 *N. J. L.* 5 *(Sup. Ct.* 1946), where the court stated on *page* 7:

"Evidence is not necessarily conclusive because uncontradicted. Where the particular circumstances reasonably give rise to con-

flicting inferences as to testimonial trustworthiness, the evidence is not conclusive merely because it is uncontradicted by direct testimony."

and *Koch v. La Porta*, 30 *N. J. Super.* 388 (*App. Div.* 1954), where it was said at *page* 391:

"Defendant maintains that there being no direct contradiction of his testimony that the light was on at 1:30 A. M., the court was bound to accept this as the fact. That is not the law. Evidence, though uncontradicted, is still for the jury where reasonable minds may entertain different views as to its truth."

It might also have cited the more recent officially reported case of *Syle v. Freedley*, 27 *N. J. Super.* 461, 468 (*App. Div.* 1953*)*, which has language similar to that in the *Bowen* case, *supra.*

It relies in large measure on *Samuels v. The Mercantile Insurance Company,* an unreported case in the Appellate Division of the Superior Court, decided July 29, 1955, about one year before its decision in the present case. That case involved a claim for the insured value of a ring that was allegedly stolen from the plaintiff's house. The issues related to ownership and to whether the ring was lost or stolen. The case went to the jury on those two issues, and it found, against the plaintiff, that the ring was not lost or stolen. The plaintiff's contention on appeal was that his testimony as to the loss of the ring was not contradicted and therefore the court should have taken the case from the jury on that issue. The Appellate Division affirmed the judgment holding the issue was properly submitted to the jury. But in the *Samuels* case the record revealed several contradictions in the plaintiff's testimony and sharp conflict between the testimony of the plaintiff and others who testified, which were sufficient bases for the drawing of conflicting inferences, quite a different situation from that which confronts us here where the plaintiffs' evidence is not only uncontradicted but not conflicting within itself. In the *Samuels* case the issue was, therefore, unquestionably for the jury to

determine, *Bachman Choc. Mfg. Co. v. Lehigh Wrhse & T. Co.*, 1 *N. J.* 239 (1949), *Earlin v. Mors, Id.*, at 336 (1949), and as authority it is therefore of little help to the defendant here. But while we have no quarrel with the result of the *Samuels* case, we nevertheless question the broad rule it announced for all cases such as this. It was there declared:

"The subject matter of the testimony was entirely within the control of the plaintiff and the opportunity to have the jury pass upon the credibility was the only protection that the defendant could have against a fraudulent claim. If an insured decides to make easy money by hiding, pawning or selling his jewelry and then claim insurance for it, the insurer can only hope that his demeanor on the witness stand will betray his purpose to the jury. In such a case the insurer should not be deprived of this protection on the ground that the testimony of the insured is uncontradicted."

The court there cited and relied for the statement of this broad rule on *Schmidt v. Marconi Wireless Tel. Co.*, 86 *N. J. L.* 183 (*E. & A.* 1914), where the Court of Errors and Appeals adhered to the view that unless the existence of a fact is admitted, it must, in every case where a jury sits, be for them to decide. In the *Schmidt* case, where John W. Griggs, a former governor of New Jersey, testified to facts which were not contradicted, the court said at *page* 186:

"It cannot therefore be said that, by his failure to controvert it, he impliedly admitted its truth. Of course the testimony of a man whose character for truth and integrity is so universally known as that of Governor Griggs would always be accepted as a correct recital of the facts spoken to as he remembered them. But it will hardly do to say that the character of a witness is the determining factor upon the question whether the facts testified to by him shall be determined by the court or by the jury. It cannot be that, where the character of the witness for truth and veracity is known by the court to be unimpeachable, the facts sought to be established by his testimony are to be determined by the court, but that where, in the judgment of the court, the witness is not entitled to full faith and credit, the facts sought to be proved by him must be determined by the jury. No such rule of evidence exists. In every case where the issue depends upon the determination of facts the existence of which is not admitted, the jury, and not the court, must determine them."

Unquestioning adherence to the ancient doctrine, *ad quaestionem facti non respondent judices, ad quaestionem juris non respondent juratores, Co. Lit.* 155*b*, that all questions of fact are for the jury in every case is the result of a failure to recognize the progress that has come about in our common-law system. The evolution of the common-law jury trial has been away from the early doctrine, and has developed to the point where we require the determination by the jury only of the existence or nonexistence of those facts in issue as to which the minds of reasonable men might differ in the application of their mental processes to the evidence. Therefore, when the proof of a particular fact is so meager or so fraught with doubt that a reasonably intelligent mind could come to no conclusion but that the fact did not exist there is no question for the jury to decide. Likewise, when the proof on a question of fact is so strong as to admit of no reasonable doubt as to its existence, again, there is no question for the jury to decide. In both these cases the court must make the determination and advise the jury accordingly, *Haines v. Merrill Trust Co.*, 56 *N. J. L.* 312, 313–314 (*E. & A.* 1893); 9 *Wigmore on Evidence* (*3d ed.*), sections 2494, 2495.

The efficiency of our modern trials is determined in large measure by the extent of the judge's authority in relation to the jury. The quest for justice must be carried out under the guiding hand of the judge. His power to control the conduct of the case, to comment on the evidence and in appropriate cases to direct the verdict dictated by the evidence became essential parts of the jury trial as it evolved from the early common law and these features must be protected and nurtured if our living and dynamic legal system is to continue in its present greatness and grow greater, 1 *Holdsworth, History of English Law* (*3d. ed.* 1922), 345; *Thayer, Preliminary Treatise on Evidence* (1898), *c.* 5, *pp.* 183–262, 9 *Wigmore on Evidence* (*3d ed.*), 278. Professor James B. Thayer, in "Law and Fact in Jury Trials," 4 *Harv L. Rev.* 147, 169 (1890) concludes:

"It seems, then, to be thoroughly plain that the attributing to the jury of questions of fact, in our common-law system, is to be taken with the gravest qualifications. Much fact which is part of the issue is for the judge; much which is for the jury is likely to be absorbed by the judge, 'whenever a rule about it can be laid down.' [*Tindal v. Brown*, 1 *T. R.* 167, per Lord Mansfield *Holmes' Com. Law*, 122–9.] As regards all of it, the jury's action may be excluded or encroached upon by the cooperation of the judge with one or both of the parties; and, as regards all, the jury is subject to the supervision of the judges in order to keep it within the limits of reason."

■■ Thus, we question the wisdom of such a broad rule as is expounded in *Schmidt v. Marconi Wireless Tel. Co., supra,* 86 *N. J. L.* 183 (*E. & A.* 1914), and by the Appellate Division in the *Samuels* case, *supra.* Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury, *Koch v. La Porta,* 30 *N. J. Super.* 388, 391 (*App. Div.* 1954); *Cetofonte v. Camden Coke Co.,* 78 *N. J. L.* 662, 27 *L. R. A., N. S.* 1058 (*E. & A.* 1910); *In re Perrone's Estate,* 5 *N. J.* 514, 522 (1950); *cf. Hoffman v. Lasseff,* 110 *N. J. L.* 122 (*E. & A.* 1933); *Dooley v. Saunders U-Drive Co.,* 109 *N. J. L.* 295 (*E. & A.* 1932); *Patterson v. Surpless,* 107 *N. J. L.* 305 (*E. & A.* 1930); *Doran v. Thomsen,* 76 *N. J. L.* 754 (*E. & A.* 1908); *Kirrer v. Bromberg,* 113 *N. J. L.* 98 (*Sup. Ct.* 1934). But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the court to decide and not the jury. *Mortgage Corp. of N. J. v. Aetna Cas. & Surety Co.,* 19 *N. J.* 30 (1955); *Ocean Accident & Guarantee Corp., Ltd. v. Lincoln National Bank,* 112 *N. J. L.* 550, 553 (*E. & A.* 1934); *cf. Venghis v. Nathanson,* 101 *N. J. L.* 110 (*E. & A.* 1925); *Tischler v.*

*Steinholtz,* 99 *N. J. L.* 149 (*E. & A.* 1923); *Mahan v. Walker,* 97 *N. J. L.* 304 (*E. & A.* 1922); *McCarthy v. Metropolitan Life Ins. Co.,* 75 *N. J. L.* 887 (*E. & A.* 1908). In this process credibility is but one of the elements upon which the mind must work in the determination of the final result. The same reasoning process is used in reaching an opinion as to credibility as is used in arriving at any other opinion or judgment by the court and there, therefore, appears to be no good reason for denying to the court the right to apply its judgment to that issue in the ultimate determination of the result. Credibility in such a case is not a matter for the jury. The power to reach an opinion as to credibility is given to the court in upsetting a verdict at common law and restated in the form of rules in *R. R.* 1:5–3(*a*), *R. R.* 3:7–11(*b*), and it surely should have the same power in the analogous situation where the circumstances call for a direction of a verdict. In each situation the rule that must prevail is one of reasonable judgment applied to the particular facts of the case.

The matter has not been better discussed than by Judge Dwight Campbell in *Jerke v. Delmont State Bank,* 54 *S. D.* 446, 223 *N. W.* 585, 72 *A. L. R.* 7, 16–19 (*Sup. Ct.* 1929). 9 *Wigmore* (*3d ed.*) 306. The question is so important as to justify quotation at some length:

"* * * The existence or nonexistence of ultimate issuable facts must be determined from the evidence produced in court, whether the determination is made by a judge or by a jury, by a process of rationalization and judgment, and by the application of the thinking faculties of the human mind to the evidence. * * *

* * * Before there is anything for submission to a jury, the evidence offered as to the ultimate facts must be such that the application of normal intellectual faculties thereto might by the customary and normal processes of reasoning arrive at different judgments or conclusions.

* * * * * * * *

If reasonable minds could arrive at but one conclusion from the evidence, by applying their intellectual processes thereto, then the question as to whether the party having the burden of proof has established the issuable facts in that particular case is a question to be decided by the judge, and not by the jury, and it is probably a mere matter of phraseology and definition of terms in such a case

whether we say, as a matter of language, that it then becomes a question of law for the court, or whether we say that, being a question of fact upon which reasonable minds could not differ, it is such a question of fact as will be decided by the judge, and not by the jury, though undoubtedly the latter phrasing is more accurate.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

&ast; &ast; &ast; the entry of the factor of credibility, &ast; &ast; &ast; can make no difference in the operation of the fundamental principle which necessarily underlies the direction of verdicts in all cases. The question of whether reasonable minds could arrive by reasoning processes at more than one opinion or conclusion is always a question for the judge.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Pursuing the matter somewhat further, we come to the precise question involved in the instant case, where the party having the burden of proof depends for establishing the existence of the ultimate fact, either in whole or in part, upon the oral testimony of a witness who is interested in the transaction.

The answer to this question does not state any rule of law, but merely announces a determination of logic or reason. The only rule of law involved is that which announces that the judge will determine the matter without the assistance of the jury, when reasonable minds applied to the evidence could properly come to but one conclusion. &ast; &ast; &ast;

Our question further narrows to this then: Ought a judge to say, as a matter of reason and judgment, that the mere fact that a witness is interested in the matter in controversy, in and of itself, without regard to other circumstances of the case, makes it reasonable to disbelieve or to fail to believe his testimony, in the light of general human experience? We do not believe that any court has gone so far as to lay down any such doctrine, or enunciate any such general principle, whether it be viewed as a matter of law, or as a matter of logical rationalization. The sound view seems to us to be this: That each case must depend upon its own facts, and that the mere fact of interest in the controversy does not, in and of itself, and apart from other circumstances appearing in the case, render it a reasonable thing to disbelieve the testimony of a witness whom otherwise it would be unreasonable to disbelieve, and this, we think, is the established practice of the great majority of courts."

Wigmore in his *Treatise on Evidence* (*3d ed.*), *volume 9, section 2495, pp. 305–6, supra,* states the rule as follows:

"That a verdict may also be directed *for the proponent* is accepted by the majority of Courts, though it is more plausibly open to dispute. The usual situation is that of a plaintiff who has produced a mass of evidence sufficient to throw upon the defendant the liability of producing some evidence to the contrary, and if this

duty is not sustained, it is the judge's function to make the decision. The only objection here can be that the judge must not reach his decision by assuming the plaintiff's testimony to be true (because that is the jury's province) ; yet where the testimony is undisputed, or where in some other way that assumption is unnecessary, this objection disappears. A less common situation is that of a defendant having an affirmative plea (for example, payment of a note, or contributory negligence in personal injury) ; but here also a verdict may be ordered for the defendant, provided the result can be reached upon undisputed testimony of the defendant, or upon testimony of the plaintiff, which the latter must concede to be true."

The right of a party to have his uncontradicted testimony given conclusive effect has been the subject of no small consideration by the courts of this country, 88 *C. J. S., Trial, sections* 213–215; 53 *Am. Jur., Trial, sections* 300, 357, 359; see also annotations in 8 *A. L. R.* 796, 814, 72 *A. L. R.* 27. It has also been the subject of no small amount of confusion in the law; see the cases collected under the notes in 72 *A. L. R.* 27, 32, 40. While the semblance of a general rule is recognizable to the effect that such testimony does not conclusively establish the facts testified to because it is said that the credibility of such a witness presents a question for jury consideration, it has been the subject of so many overriding exceptions as to make it almost totally worthless as a rule of even the most general application. In the cases this rule is stated many times but generally not applied except in those instances where the testimony, while not actually contradicted, is, nevertheless, infected with the same elements—it is inconsistent with natural probabilities, extraordinary or incomplete—the absence of which should be grounds for a direction of a verdict and is consequently subject to some suspicion and doubt. A cogent example of this situation is found in *Second National Bank of Hoboken v. Smith,* 91 *N. J. L.* 531, 537 (*E. & A.* 1917), where reliance was had on *Schmidt v. Marconi Wireless Tel. Co., supra:*

"The credibility of a witness is for the jury. *Clark v. Public Service Electric Co.,* 86 *N. J. L.* 144. And where the issue depends upon facts the existence of which is not admitted, even though

testified to by a credible witness who is unchallenged, the question is for the jury. *Schmidt v. Marconi Wireless Tel. Co.*, 86 *N. J. L.* [183] 186."

But when this case is carefully examined it is obvious that it is one where the evidence, though undisputed, was such that the inferences to be drawn from it were in doubt and that fair-minded men could differ as to the conclusions dictated by the facts so presented.

■ The great number of cases, however, incline to the more flexible view expressed by us here, that where the uncontradicted testimony of a witness, interested or otherwise, is unaffected by any conflicting inferences to be drawn from it and is not improbable, extraordinary or surprising in its nature, or there is no other ground for hesitating to accept it as the truth, there is no reason for denying the verdict dictated by such evidence, *Jerke v. Delmont State Bank, supra; McNabb v. Virginian Ry. Co.*, 55 *F.* 137, 138 (4 *Cir.* 1932); *Crilly v. Fitzsimmons*, 73 *S. D.* 646, 48 *N. W.* 2d 62 (*Sup. Ct.* 1951); *Grover v. Bach*, 82 *Minn.* 299, 84 *N. W.* 909 (*Sup. Ct.* 1901); *Goedhard v. Folstad*, 156 *Minn.* 453, 195 *N. W.* 281 (*Sup. Ct.* 1923); *Marks v. New Orleans Cold Storage Co.*, 107 *La.* 172, 31 *So.* 671, 57 *L. R. A.* 271 (*Sup. Ct.* 1902); *Edelen v. First National Bank of Hagerstown*, 139 *Md.* 413, 115 *A.* 599 (*Ct. App.* 1921); *Boudeman v. Arnold*, 200 *Mich.* 162, 166, 166 *N. W.* 985, 8 *A. L. R.* 789 (*Sup. Ct.* 1918); *Hull v. Littauer*, 162 *N. Y.* 569, 57 *N. E.* 102 (*Ct. App.* 1900); see also 88 *C. J. S., Trial, section* 215, *p.* 496, and the annotations in 72 *A. L. R.* 36–40 and 8 *A. L. R.* 818, 819, 824–827; for some contrary views see *Sartor v. Arkansas Nat. Gas Co.*, 321 *U. S.* 620, 64 *S. Ct.* 724, 88 *L. Ed.* 967, 973 (1944), and *Bobbe, "The Uncontradicted Testimony of an Interested Witness,"* 20 *Corn. L. Rev.* 33 (1934).

The development of the law in New York in this field parallels our experience here to a degree. There the cases sought to establish an inflexible rule that uncontradicted testimony of an interested witness involved, *per se*, a question of credibility, of fact, and therefore was to be deter-

mined by a jury in every case where one sat, *Elwood v. Western Union Telegraph Co.*, 45 N. Y. 549 (*Ct. App.* 1871); *Kavanagh v. Wilson*, 70 N. Y. 177 (*Ct. App.* 1877); *Wohlfahrt v. Beckert*, 92 N. Y. 490 (*Ct. App.* 1883); *Sipple v. State*, 99 N. Y. 284, 1 N. E. 892, 3 N. E. 657 (*Ct. App.* 1885); *Joy v. Diefendorf*, 130 N. Y. 6, 28 N. E. 602 (*Ct. App.* 1891). But in *Hull v. Littauer, supra*, 162 N. Y. 569, 572, 57 N. E. 102 (*Ct. App.* 1900), the Court of Appeals took a more reasonable view, which substantially diluted the strength of these former authorities in favor of the rule of reason and experience adopted in the instant case. The court there said:

"Generally, the credibility of a witness who is a party to the action, and therefore interested in its result, is for the jury; but this rule, being founded in reason, is not an absolute and inflexible one. If the evidence is possible of contradiction in the circumstances; if its truthfulness or accuracy, is open to a reasonable doubt upon the facts of the case, and the interest of the witness furnishes a proper ground for hesitating to accept his statements,— it is a necessary and just rule that the jury should pass upon it. Where, however, the evidence of a party to the action is not contradicted by direct evidence, nor by any legitimate inferences from the evidence, and it is not opposed to the probabilities, nor, in its nature, surprising or suspicious, there is no reason for denying to it conclusiveness. Though a party to an action has been enabled, since the legislation of 1857 (*Ch.* 353, *Laws of* 1857), to testify as a witness, his evidence is not to be regarded as that of a disinterested person, and whether it should be accepted without question depends upon the situation as developed by the facts and circumstances and the attitude of his adversary."

See also *Piwowarski v. Cornwell*, 273 N. Y. 226, 229, 7 N. E. 2d 111, 112 (*Ct. App.* 1937).

 Turning now again to the case at bar, we find the evidence in the case before us does not meet the requisite tests for the direction of a verdict. The evidence causes too many pauses in the reasoning process. In the light of common human experience we find it hard to understand the circumstances in which the $12,000 worth of jewelry was purchased or why it should be left in an automobile unguarded overnight. We find it extraordinary that a man's

wristwatch should be placed in a jewelry case and left in an automobile for two nights and the intervening day with no other timepiece available to him. We find the acts of the alleged thief unnatural, too selective and too discriminating to be acceptable without some doubt. No thief except one peculiarly well informed would have lingered at the scene of his crime to make the highly favorable choice of booty that this one did, taking in the main only valuable pieces and carefully leaving the trinkets for the plaintiffs. We are of the opinion that a jury, fair-minded men, could honestly have differed as to whether or not the plaintiffs by their proofs had established a *prima facie* case in favor of their claim. While as in the *Second National Bank of Hoboken v. Smith, supra,* 91 *N. J. L.* 531 (*E. & A.* 1917), and *Schmidt v. Marconi Wireless & Tel. Co., supra,* 86 *N. J. L.* 183 (*E. & A.* 1914), we have here dealt with a case involving uncontradicted testimony as to which men of ordinary fairness and reason might differ in the conclusions to be drawn from it, unlike those cases we refuse to recognize the existence, in this State, of a hard and fast rule that the credibility of a witness is always a question for jury determination.

Judgment reversed and the matter remanded for a new trial.

HEHER, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING and JACOBS—5.

*For affirmance*—None.