NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2327-12T3

DR. HUMAYUN AKHTAR and
YOSARIA AKHTAR,

      Plaintiffs-Appellants,

v.

JDN PROPERTIES AT FLORHAM PARK, L.L.C.,
JDN PROPERTIES, L.L.C., JOSEPH NATALE,
RANDY DELUCA, DELTRUS, L.L.C., and
CASEY & KELLER, INC.,

      Defendants-Respondents.

APPROVED FOR PUBLICATION

February 24, 2015

APPELLATE DIVISION

Argued January 6, 2015 — Decided February 24, 2015

Before Judges Koblitz, Haas and Higbee.

On appeal from Superior Court of New Jersey,
Law Division, Morris County, Docket No.
Docket No. L-1701-07.

Jay J. Rice argued the cause for appellants
(Nagel Rice, L.L.P., attorneys; Mr. Rice, of
counsel and on the brief; Randee M. Matloff,
on the brief).

Andrew S. Cimino argued the cause for
respondent Casey & Keller (Marshall Dennehey
Warner Coleman & Goggin, attorneys; Mr.
Cimino, of counsel and on the brief).

    The opinion of the court was delivered by

KOBLITZ, J.A.D.

Plaintiffs, Dr. Humayun Akhtar and his wife, Yosaria, appeal from a jury verdict dismissing their malpractice claims against defendant,[1] engineering firm Casey & Keller, Inc. A judge initially awarded plaintiffs summary judgment on liability, but a second judge reconsidered and vacated the grant of summary judgment. A third judge held a full trial, which yielded a no-cause jury verdict. Plaintiffs maintain that they were entitled to summary judgment as a matter of law, or at least a new trial, because their expert's opinion was unrebutted by defendant's expert. In light of plaintiffs' burden of proof and the conflicting evidence as to the factual predicates for their expert's opinion, we affirm.

I

As developer JDN Properties at Florham Park, L.L.C., (JDN FP), was planning a ten-lot project on a set of steep properties, its manager, Randy DeLuca, engaged engineer Michael Lanzafama's firm, Casey & Keller, Inc. Lanzafama's firm was to perform title, topographic, and utilities surveys, prepare designs for a road and other infrastructure for the project, and

---

[1] "Defendant" refers only to Casey & Keller. The complaint against JDN FP, JDN Properties, and Joseph Natale, the principal of both entities, as well as on site-manager Randy DeLuca and his company Deltrus (collectively, the JDN defendants) is the subject of a separate consolidated appeal under docket numbers A-5907-11 and A-6064-11.

submit those documents for approval from the appropriate government agencies. In the course of that work, Lanzafama drafted an individual lot grading plan for what would become plaintiffs' property, depicting two semi-circular Allan Block retaining walls and incorporating the manufacturer's specifications. The grading plan was filed with the municipality in conjunction with the property's site plan and approved by borough engineer Robert Kirkpatrick in April 2005.

Plaintiffs contracted with JDN FP to purchase the lot and have a home constructed, with certain modifications, such as one to accommodate a full walk-out basement, which ultimately drove the price up to just over $1.56 million. Akhtar, who frequently visited the site during construction, testified at trial that shortly before the closing, he was surprised to find that the builder had deviated from Lanzafama's design by constructing a much longer, higher retaining wall along the eastern side of the property than originally designed. He acknowledged, however, that he had requested that the wall be raised by at least one foot to accommodate a backyard pool, and DeLuca introduced testimony suggesting that plaintiffs' requests for modifications required a more level backyard and consequently, expansion of the retaining wall. Lanzafama claimed at trial that his personnel had no knowledge of the modification until their site

visit for a final survey, but confirmed that his design provided sufficient information for building the wall ultimately constructed.

Nonetheless, the modification was undertaken without prior municipal approval, and JDN FP had apparently never obtained a permit for the wall in the first place. On one of his site visits, borough engineer Kirkpatrick noticed the change, along with other unauthorized work. Because the municipality had never inspected the retaining wall's construction, he requested a letter assuring that the wall had been built according to the manufacturer's specifications. Lanzafama wrote the letter at DeLuca's request.

At trial Lanzafama testified that, before doing so, he discussed with DeLuca the methods that had been used to construct the wall and inspected the wall himself, albeit after its completion. He explained that while investigating, he observed geogrid fabric protruding from the wall at various points, confirming that the three appropriately spaced layers of geogrid had been placed. He also observed drainage pipes extending from the wall, suggesting that the required toe drain had been installed at the crushed stone's base to evacuate any water that might build up within or alongside the wall. His field crew took measurements of the wall to confirm its location

and elevation, and he himself examined soil immediately behind the wall to confirm its stability. He further reviewed photographs his crew had taken on site visits, which he believed showed that the blocks, gravel, and geogrid were appropriately placed and that the correct compaction tools had been used. Moreover, he recalled his own prior site visits at various stages of the wall's construction, albeit undertaken for other reasons, where he nonetheless saw the wall being built with appropriate materials and equipment. He concluded from those observations that the wall had been appropriately built and felt comfortable writing the letter.

Borough building inspector Stephen Jones testified at deposition that the letter had not specifically been requested in connection with the review of any application for a certificate of occupancy. It was, in any event, submitted in connection with such an application. The borough issued a temporary certificate of occupancy for the property on June 1, 2006. Pursuant to the contract, JDN FP then remitted a "time of the essence letter" to plaintiffs and set a closing date for June 9. Akhtar performed a walk-through of the property prior to closing and requested repair of certain defects. Plaintiffs first became aware of serious problems with the property when

they learned from a plumber not long after closing that the house was "sliding." They have never moved in.

Subsequent investigations by engineering firm LAN, hired by JDN FP, revealed cracking in the foundation under a substantial portion of the eastern side of the house due to improperly compacted soil. Plaintiffs, meanwhile, retained Henry Naughton, an engineering consultant, who concluded that the cracks in the foundation were attributable to the soil's poor bearing capacity. He further concluded that the eastern retaining wall, which Lanzafama had vouched for, had questionable long term stability that, because of transport of soil through the wall, would undermine structures supported on the soil. He testified that failure of the retaining wall was one of the causes of the movement of the house. LAN recommended installing helical piles to bolster the foundation and arrest its settlement, but plaintiffs and JDN FP were never able to agree on an appropriate remedy.

At trial, plaintiffs claimed Lanzafama's certification that the wall had been built correctly caused the certificate of occupancy to issue, requiring plaintiffs to close on a deficiently built house with a failing retaining wall. To that end, they introduced Naughton, who testified that no engineer should issue a certification without conducting an investigation

sufficient to make the engineer reasonably certain of its accuracy. He set forth numerous investigatory steps a reasonable engineer might take to reach an appropriate level of certainty and how Lanzafama's course of conduct fell short. He recounted that, although Lanzafama had never overseen the construction or inspected the wall as it was built, he should at least have discussed with the contractor how each aspect of the manufacturer's specifications had been met, that the soil had been appropriately compacted, and that the appropriate lengths of geogrid had been installed. Moreover, he should have requested compaction and soil density test results from the contractor and performed independent tests if the contractor made none available.

Naughton acknowledged that Lanzafama had reviewed photographs depicting the progress of construction of the wall, but disagreed that anything meaningful could be learned from them. He asserted, moreover, that, had Lanzafama conducted a proper investigation before issuing the letter, particularly had he performed any soil testing, it would have set off "bells and whistles" undermining any confidence he could have as to the retaining wall's construction.

Plaintiffs also introduced Martin Grant, an expert surveyor. Grant took a series of measurements at several points

on the wall on eight occasions from October 2007 to June 2012, and concluded from them that the wall had moved approximately one to three inches, well in excess of what the manufacturer's specifications contemplate. All movement, moreover, had been in a consistent easterly direction.

Defendant introduced engineering expert Robert Simpson, who testified that the damage to the house had been caused by the improperly-compacted fill beneath the foundation, not the retaining wall. As to the issue of breach, he summarized his understanding of what Lanzafama had done before preparing the letter, but never offered an opinion as to whether issuing the letter constituted a deviation from any accepted standard of care. He candidly acknowledged that he would not have written the letter under those circumstances, but elaborated that that was because his firm "insist[s] upon full-time inspections for all certifications" and that defendant might simply have different standards.

Moreover, Simpson believed the evidence inconclusive as to whether the wall had been properly constructed. There was strong evidence from testing and measurements by the parties' experts that the wall was stable. He concluded from his own observations and other experts' data that the wall had shown little movement and was not failing, and that, even if it were,

it was too far from the house for that failure to have caused the damage the house sustained.

Defendant also conducted its own investigation of the wall's movement, taking measurements approximately every six months between November 2007 and August 2012. Such measurements revealed that the wall had moved no more than a fraction of an inch within that time, consistent with the manufacturer's representation of the wall's flexibility. Lanzafama explained that Allan Block retaining walls were "basically soil masses that act as giant gravity walls," which acquire their stability from geogrid fabric installed "at various levels within the soil mass." Soil between each pair of geogrid layers is compacted to form a single unit that acts together. The manufacturer's specifications show that the walls are designed to be flexible and "move with stresses, yet not yield."

Finally, defendant presented Wayne Sanclimenti of Ron-Jon Construction, the subcontractor that built the eastern retaining wall. Sanclimenti testified to his experience as a certified Allan Block builder for at least fifteen years, explained the wall's construction process with reference to photographs taken during that construction, and stated that the wall had been built according to the manufacturer's specifications.

The jury voted five to one that defendant did not breach its standard of care. Therefore, the jury did not proceed to consider proximate cause or damages.  The trial judge denied plaintiffs' motion for a new trial.

II

Plaintiffs first challenge the second judge's reconsideration of the first judge's grant of partial summary judgment in favor of plaintiffs as to liability.  A court may grant summary judgment as to an issue only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).  The facts must be viewed in a light most favorable to the non-moving party.  Polzo v. Cnty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).  The slightest doubt as to an issue of material fact must be reserved for the factfinder, and precludes a grant of judgment as a matter of law.  Saldana v. DiMedio, 275 N.J. Super. 488, 494 (App. Div. 1994).

Any issues of credibility must be left to the finder of fact.  Conrad v. Michelle & John, Inc., 394 N.J. Super. 1, 13

(App. Div. 2007). That is so even where a witness's testimony is uncontradicted, <u>D'Amato by McPherson v. D'Amato</u>, 305 <u>N.J. Super.</u> 109, 115 (App. Div. 1997), as long as, when considering the testimony in the context of the record, persons "of reason and fairness may entertain differing views as to [its] truth [.]" <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 148 <u>N.J.</u> 396, 415 (1997) (quoting <u>Ferdinand v. Agric. Ins. Co. of Watertown, N.Y.</u>, 22 <u>N.J.</u> 482, 494 (1956)). Summary judgment should be denied unless "the right thereto appears so clearly as to leave no room for controversy." <u>Saldana</u>, <u>supra</u>, 275 <u>N.J. Super.</u> at 495. Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. <u>Nicholas v. Mynster</u>, 213 <u>N.J.</u> 463, 478 (2013).

Once made, such an interlocutory order may always be reconsidered, on good cause shown and in the interests of justice, prior to entry of final judgment. <u>Johnson v. Cyklop Strapping Corp.</u>, 220 <u>N.J. Super.</u> 250, 257, 263-64 (App. Div. 1987), <u>certif. denied</u>, 110 <u>N.J.</u> 196 (1988). Nonetheless, relitigation of an interlocutory order before successive judges of coordinate jurisdiction is generally disfavored, <u>Cineas v. Mammone</u>, 270 <u>N.J. Super.</u> 200, 207-08 (App. Div. 1994), and the "law of the case" doctrine invests the court with discretion to decline relitigation of any legal decision made earlier by an

equal court in the same case, <u>Lombardi v. Masso</u>, 207 <u>N.J.</u> 517, 538-39 (2011). The doctrine is not inflexible, however, <u>Southport Dev. Group v. Twp. of Wall</u>, 295 <u>N.J. Super.</u> 421, 430 (Law Div. 1996), <u>aff'd</u>, 310 <u>N.J. Super.</u> 548 (App. Div. 1998), <u>certif. denied</u>, 156 <u>N.J.</u> 384 (1998), and a court maintains the discretion to revisit the earlier ruling whenever those "'factors that bear on the pursuit of justice and, particularly, the search for truth'" outweigh "the value of judicial deference for the rulings of [the] coordinate judge." <u>Hart v. City of Jersey City</u>, 308 <u>N.J. Super.</u> 487, 498 (App. Div. 1998) (quoting <u>State v. Reldan</u>, 100 <u>N.J.</u> 187, 205 (1985)). Such may be the case, for example, where a court recognizes clear error in the earlier decision. <u>Sisler v. Gannett Co., Inc.</u>, 222 <u>N.J. Super.</u> 153, 159 (App. Div. 1987), <u>certif. denied</u>, 110 <u>N.J.</u> 304 (1988).

In <u>Lombardi</u>, our Supreme Court emphasized that:

> [A]lthough a party who obtains summary judgment may believe he is absolutely free of the litigation, it is a contradiction in terms to say that an interlocutory decree should be a finality. The policy that litigation must have an end is not threatened in such a case, because litigation has not yet terminated. In other words, a party's sense of finality upon summary judgment is just that — a feeling unsupported by the notion of what is, in fact, interlocutory. Interlocutory orders are always subject to revision in the interests of justice.

12

> [Lombardi, supra, 207 N.J. at 535-36
> (internal citations and quotation marks
> omitted).]

The first motion judge granted partial summary judgment to plaintiffs on liability exclusively because defendant had introduced no expert testimony disputing Naughton's conclusion that defendant had deviated from the accepted standard of care. The second motion judge, relying on Lombardi, supra, 207 N.J. at 534-40, concluded that the order granting partial summary judgment to plaintiffs should be vacated and a trial had on liability as well as damages. He noted that deposition testimony from the building inspector, Jones, put into dispute whether issuance of the certificate of occupancy was conditioned on defendant's letter, and that data as to movement of the retaining wall did not inexorably compel the conclusion that the wall was moving. Yet plaintiffs' expert Naughton had relied on those factual circumstances to conclude that defendant's alleged breach of the accepted standard of care was a proximate cause of plaintiffs' damages. Resolution of either factual dispute in defendant's favor would call into question the integrity of Naughton's opinion. Moreover, there remained a factual dispute as to whether the wall had, in fact, been built according to specifications.

The summary judgment standard takes into account who has the burden of proof on a matter. <u>CPC Int'l, Inc. v. Hartford Accident & Indem. Co.</u>, 316 <u>N.J. Super.</u> 351, 375 (App. Div. 1998), <u>certif. denied</u>, 158 <u>N.J.</u> 73 (1999). We have explained that, where "'the movant is also the party bearing the burden of persuasion with regard to a claim, its initial summary judgment burden is somewhat higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" <u>Ibid.</u> (quoting <u>Moore's Federal Practice</u>, § 56.13(1), at 56-138 (3d ed. 1997)). Consequently, where the plaintiff's case hinges on the testimony of a witness, whose credibility is subject to question considering that testimony in the context of the record, there may be no "'single, unavoidable resolution'" of disputed questions of fact so as to warrant summary judgment. <u>Ibid.</u> (quoting <u>Brill</u>, <u>supra</u>, 142 <u>N.J.</u> at 540). Naughton's report was not so "clear and convincing [or] . . . [un]contradicted <u>in any way</u> by witnesses or circumstances, [or] so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind . . . ." <u>Cameco, Inc. v. Gedicke</u>, 299 <u>N.J. Super.</u> 203, 213 (1997) (emphasis added) (quoting <u>Ferdinand</u>, <u>supra</u>, 22 <u>N.J.</u> at 494), <u>aff'd as modified</u>,

157 N.J. 504 (1999). His report was not so eminently credible in the context of this record, even if unopposed formally by a defense expert, as to demand judgment as a matter of law in light of plaintiffs' burden of proof.

Moreover, the factual predicates for Naughton's opinion remained subject to legitimate dispute. The value of an expert's opinion is in elucidating evidence in the record and explaining to lay factfinders the significance of that evidence in light of the expert's training and experience. State v. Odom, 116 N.J. 65, 76 (1989). Naked opinions have no probative value in themselves and, indeed, are inadmissible to the extent they bear no connection to the factual record. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011). The first motion judge stated that Naughton asserted that defendant had breached the accepted standard of care, specifically because it had "issued [its] certification with no attempt to verify how the retaining walls at the subject property were actually constructed." (Emphasis added).

A finder of fact could certainly conclude otherwise on the record available at summary judgment. There was evidence that at least some investigation occurred, including Lanzafama's observations during site visits, discussion with DeLuca, and examination of photographs of the retaining wall during

construction. The fact-sensitive inquiry as to whether that investigation was adequate to meet the standard of care Naughton outlined was one for the jury, which would remain free to reject Naughton's credibility in whole or in part, or to resolve any disputed issue as to the factual predicate for Naughton's opinion in defendant's favor. See Suarez v. E. Int'l Coll., 428 N.J. Super. 10, 27 (App. Div. 2012) (cautioning that a court must not invade a jury's exclusive role as factfinder), certif. denied, 213 N.J. 57 (2013). Defendant's failure to introduce any expert to address the issue of breach, in other words, did not in itself warrant summary judgment for plaintiffs. The factual record on which Naughton's opinion relied was simply not so one-sided as to warrant that relief. Gilhooley v. Cnty. of Union, 164 N.J. 533, 545 (2000).

The second motion judge did not abuse his discretion in reconsidering the first motion judge's ruling, and after our de novo review, we agree that plaintiffs were not entitled to summary judgment on liability.

III

Plaintiffs also contend that the trial judge should have granted their motion for a directed verdict. The standard applicable to a motion for a directed verdict is equivalent to that applicable to one for summary judgment. Frugis v.

16                                                          A-2327-12T3

Bracigliano, 177 <u>N.J.</u> 250, 269-70 (2003).  The trial court must accept as true all evidence that supports the non-moving party's position and all favorable legitimate inferences therefrom to determine whether the moving party is entitled to judgment as a matter of law.  <u>Dolson v. Anastasia</u>, 55 <u>N.J.</u> 2, 5 (1969).  The court must deny the motion so long as "reasonable minds could differ," <u>Johnson v. Salem Corp.</u>, 97 <u>N.J.</u> 78, 92 (1984), to ensure that any legitimate dispute of material fact be left to the jury, <u>Lewis v. Am. Cyanamid Co.</u>, 155 <u>N.J.</u> 544, 567 (1998).  The same standard applies on appeal.  <u>Estate of Roach v. TRW, Inc.</u>, 164 <u>N.J.</u> 598, 612 (2000).

The trial judge concluded after reviewing the evidence that judgment as a matter of law was unwarranted as to the issues of both breach and proximate cause.  Plaintiffs' challenge to this decision rests on the notion that, because Simpson never directly rebutted Naughton's opinion that defendant deviated from the accepted standard of care, plaintiffs are entitled to judgment as a matter of law.  However, as already discussed, plaintiffs were not entitled to such relief in light of their burden of proof, so long as Naughton's credibility could be reasonably subject to question, <u>see</u> <u>CPC Int'l</u>, <u>supra</u>, 316 <u>N.J. Super.</u> at 375, or so long as the factual predicate to his

opinion remained subject to reasonable dispute on this record, see Suarez, supra, 428 N.J. Super. at 27.

> **[At the direction of the court, Parts IV, V and VI are omitted from the published version. See R. 1:36-2(d).]**

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION