**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2984-15T4

J.A.S. GRANITE & TILE, L.L.C.,

      Plaintiff-Respondent,

v.

GRAND STONE & TILE, INC., VICENTE
A. BELTRA, NIDYA BELTRA, JUAN
VICENTE BELTRA, MARIA BELTRA,
and ENRIQUE BELTRA,

      Defendants-Respondents,

and

INNOVATIVE TILE & STONE, INC.,
MIGUEL BELTRA (FATHER) and MIGUEL
BELTRA (SON),

      Defendants-Appellants.

_____

INNOVATIVE TILE & STONE, INC.,

      Third-Party Plaintiff-
      Appellant,

v.

FRANCISCO MELEIRO,

      Third-Party Defendant-
      Respondent.

_____

Submitted July 13, 2017 — Decided July 24, 2017

Before Judges Yannotti and Haas.

On appeal from Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-54-11.

Eric S. Medina, attorney for appellants.

Hill Wallack, LLP, attorneys for respondent J.A.S. Granite & Tile, L.L.C. and Francisco Meleiro (Eric I. Abraham, of counsel and on the brief; Christina L. Saveriano, on the brief).

PER CURIAM

Innovative Tile & Stone, Inc. (Innovative) and its two owners, defendants Miguel Beltra (Beltra Sr.) and his son Miguel Beltra (Beltra Jr.) (collectively defendants), appeal from the February 9, 2016 order of the Chancery Division denying their motion for summary judgment against plaintiff J.A.S. Granite & Tile, L.L.C. We affirm.

The evidence submitted by the parties in support of, and in opposition to, defendants' summary judgment motion is in sharp conflict, with both sides presenting diametrically opposed factual positions on the genesis and conduct of the financial transactions that are at the heart of this matter. We view this evidence in the light most favorable to plaintiff, the non-moving party. Polzo v. Cty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

According to plaintiff's version of the events, members of the Beltra family owned a group of companies known as the Bel-Stone companies. These companies sold granite, ceramic and porcelain tile, stone, marble, and other similar building materials. The companies obtained a bank loan, using these materials as collateral, and then defaulted on the loan. A receiver was appointed and charged with the task of selling the building materials at an auction.[1]

Plaintiff is a limited liability company, with Francisco Meleiro and Adriana Meleiro acting as its only members. After losing control of its inventory to the receiver, the Beltra family formed a new corporation, defendant Grand Stone & Tile, Inc. (Grand Stone), with Vincente A. Beltra and Nidya Beltra serving as the company's sole officers, directors and shareholders. Grand Stone asked plaintiff to purchase all of the building materials at the auction and then sell these items to Grand Stone, which offered to purchase them for approximately twice the amount plaintiff would pay. Plaintiff agreed to this proposal and the parties executed a written agreement to this effect on April 18, 2010.

---

[1] By this time, the building materials were housed in several states, including New Jersey, Massachusetts, Illinois, Pennsylvania, Tennessee, and Indiana.

As part of this agreement, Grand Stone agreed to pay plaintiff "$375,000 as an upfront initial payment" for the assets that were the subject of the auction, with this amount being held in escrow by plaintiff's attorney. If plaintiff was the successful bidder, it would keep the payment; if not, the money would be returned to Grand Stone.

The next day, Beltra Jr. executed a check in the amount of $375,000 payable to plaintiff's attorney's trust account. According to plaintiff, another family member, defendant Juan Vicente Beltra, delivered the payment to plaintiff's attorney.

One of plaintiff's owners, Francisco Meleiro, placed a bid at the auction on the building materials, but he was not the highest bidder. Another individual, Philip Perez, was the winning bidder on all of the items at the auction. On April 26, 2010, the trial court entered an order approving the results of the auction, with Perez named as the successful bidder.

However, Perez did not have the financial resources needed to complete the purchase. At that point, plaintiff approached Perez to determine if he would sell the materials to it. Perez agreed to do so. On April 28, 2010, Perez assigned all of the materials that he had the right to purchase as the result of the auction to plaintiff in exchange for plaintiff paying the receiver the amount due.

A-2984-15T4

That same day, plaintiff asserts that it reached an agreement with Grand Stone to sell all the materials it had just purchased from Perez to Grand Stone for $6,981,700. The parties prepared a bill of sale documenting the transaction. The materials that plaintiff sold to Grand Stone included:

> all slab size natural stone materials, including Granite, Marble, Soapstone, Sandstone, Slate, Travertine/Onyx, Limestone, etc.[;] all tile of natural stone materials, including Granite, Marble Soapstone, Sandstone, Slate Travertine/Onyx, Limestone, etc.; all tile of Ceramic and Porcelain; all Saddles; all A-Frames; all manufactured engineered Quartz and Marble based slab size material . . . .
>
> [(emphasis added).]

Due to the amount of financing needed to complete the transaction, plaintiff required Grand Stone to execute a written purchase money security agreement, which established and set forth the nature of the collateral to be pledged by Grand Stone to plaintiff to secure the loan. According to plaintiff, this collateral included all of the materials listed above, including the ceramic tile. The parties also executed a promissory note, which required Grand Stone to make monthly payments of $193,936.11 to plaintiff for thirty-six months, with interest payable on any principal which was not paid when due. Defendants Vincente A. Beltra, Juan Vincente Beltra, Maria Beltra, and Nidya Beltra (the

individual guarantors) provided personal guarantees to plaintiff for Grand Stone's obligations pursuant to a guaranty agreement that was also executed on April 28, 2010.

Thereafter, Grand Stone failed to make timely payments and was soon in default. Plaintiff asserts that it then learned that Innovative, which was operating out of the "same store front" as Grand Stone, had taken control of some of Grand Stone's inventory in which plaintiff had a security interest, specifically the ceramic tile, and was selling it.

On March 4, 2011, plaintiff filed a complaint against Grand Stone, the individual guarantors, Innovative, Beltra Sr., and Beltra Jr. Plaintiff sought damages for breach of contract against Grand Stone and the individual guarantors, together with injunctive relief for their default under the security agreement. As to Innovative, Beltra Sr., and Beltra Jr., plaintiff alleged that they had tortiously interfered with plaintiff's agreement with Grand Stone by converting the materials that were covered by the security agreement to their own use and then selling them.

Plaintiff thereafter filed a motion for summary judgment against Grand Stone and the individual guarantors, and these defendants did not oppose plaintiff's motion. On August 10, 2010, the trial court granted plaintiff's motion and entered judgment

in its favor against Grand Stone and the individual guarantors in the amount of $5,396,559.76.

Thereafter, plaintiff's remaining claims against Innovative, Beltra Sr., and Beltra Jr. remained pending. In early 2015, plaintiff filed an amended complaint in which it again asserted that defendants tortiously interfered with its contract with Grand Stone by converting the materials that were subject to its security interest to defendants' own use and selling them.

In December 2015, defendants filed a motion for summary judgment against plaintiff. As previewed above, defendants' account of the transactions was completely inconsistent with that presented by plaintiff.

According to defendants, Beltra Sr. and Beltra Jr. were exclusively involved in "the ceramic tile aspect of the business" previously conducted by the Beltra family through the Bel-Stone companies. Beltra Sr. was in charge of one of these companies, which was called Bel-Ceramic, and Beltra Jr. worked for him as a sales manager. When the Bel-Stone companies defaulted on the bank loan, defendants allege that the ceramic tile they owned was housed in a warehouse in Newark.

Defendants allege that they were not parties to the agreement between plaintiff and Grand Stone under which plaintiff agreed to buy the inventory at the auction and then sell it to Grand Stone.

However, Beltra Jr. asserted that one of plaintiff's owners, Francisco Meleiro, was short on cash and was seeking loans from friends and members of the Beltra family to bid on the building materials.

Beltra Jr. alleged that he then approached Meleiro and offered to pay him $375,000 for the ceramic tile portion of the inventory if plaintiff was the successful bidder at the auction. Beltra Jr. stated that Meleiro agreed on plaintiff's behalf. Beltra Jr. contended that he then cashed out a retirement account and borrowed money from a bank and his family to get the funds needed to pay Meleiro the $375,000. He also asserted that he was the individual who gave this check to plaintiff's attorney. Other than the check, Beltra Jr. presented no documentation evidencing this transaction.

When Meleiro was not the winning bidder, he allegedly told Beltra Jr. that he would try to buy the inventory from Perez, including the ceramic tile that Beltra Jr. wanted. According to Beltra Jr., Meleiro stated that he would give the ceramic tile to Beltra Jr. if he was able to consummate the deal in return for the $375,000 Beltra Jr. had already paid. If the deal fell through, Meleiro agreed to return these funds to Beltra Jr.

When Meleiro was able to purchase all of the building materials from Perez, Beltra Jr. stated that he believed the ceramic tile in the Newark location belonged to him and

Innovative.[2] He also argued that he had no knowledge of the security agreement plaintiff entered into with Grand Stone and the individual guarantors. Instead, Beltra Jr. claimed that he took possession of the ceramic tile within ten days of the date of the auction.

Beltra Jr. stated that he subsequently sold some of the tile to customers, including a company called Golden Towers, which he alleged was owned by Meleiro. Thus, defendants argued that they did not improperly convert the tile to their own use, or tortiously interfere with plaintiff's contract with Grand Stone.

Based upon the parties' widely divergent factual presentations, the trial judge concluded, after oral argument on February 9, 2016, that summary judgment was inappropriate. In a thorough oral opinion, the judge found that the legal issues raised by plaintiff's tortious interference and conversion claims "should not be decided summarily because [the parties'] state-of-mind and intent is something that's not capable of being determined on summary judgment." The judge also stated that there were "obvious evidentiary inconsistencies and infirmities" in the motion record, which could only be resolved at trial.

---

[2] Beltra Jr. also asserted that his father, Beltra Sr., had never been an officer of Innovative.

On March 13, 2016, the trial judge issued a "clarifying order," noting that his denial of defendants' motion for summary judgment was final for purposes of appellate review because the parties had agreed that any issues remaining between them would "be decided by way of binding arbitration." This appeal followed.

On appeal, defendants assert that the trial judge erred by denying their motion for summary judgment. We disagree.

In deciding motions for summary judgment, like the trial court, we review "the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bharat A. Bhagat & Cranbury Hotels, LLC, 217 N.J. 22, 38 (2014); R. 4:46-2. Summary judgment should be denied unless the moving party's right to judgment is so clear that there is no room for controversy. Akhtar v. JDN Props. at Florham Park, L.L.C., 439 N.J. Super. 391, 399 (App. Div.), certif. denied, 221 N.J. 566 (2015).

The trial court and the reviewing court must view the evidence in the light most favorable to the non-moving party. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014). This means summary judgment should be denied if the competent evidential materials, viewed in the light most favorable to the non-moving party, permit a rational factfinder to resolve the disputed issue

of material fact in favor of the non-moving party.  <u>Townsend v. Pierre</u>, 221 <u>N.J.</u> 36, 59 (2015).

The court's function is not to weigh the evidence to determine the final outcome, but only to decide if a material dispute of fact exists.  <u>Suarez v. E. Int'l Coll.</u>, 428 <u>N.J. Super.</u> 10, 27 (App. Div. 2012), <u>certif. denied</u>, 213 <u>N.J.</u> 57 (2013).  It is not the judge's role to assess credibility or determine the truth of the evidence, <u>DeWees v. RCN Corp.</u>, 380 <u>N.J. Super.</u> 511, 522 (App. Div. 2005), or to examine whether the preponderance of the evidence weighs towards one side or the other, <u>Mandel v. UBS/PaineWebber, Inc.</u>, 373 <u>N.J. Super.</u> 55, 71 (App. Div. 2004), <u>certif. denied</u>, 183 <u>N.J.</u> 213 (2005).  A motion judge may not abrogate the jury's exclusive role as the finder of fact.  <u>Suarez</u>, <u>supra</u>, 428 <u>N.J. Super.</u> at 27.

Applying these principles, we discern no basis to disturb the trial judge's reasoned determination that summary judgment was inappropriate in this case.  As discussed above, the parties could not agree on any of the critical aspects of the transactions that led to plaintiff, Grand Stone, and defendants coming into possession of the building materials formerly owned by the Bel-Stone companies.  On the one hand, plaintiff alleged that Innovative wrongfully took possession of ceramic tile from Grand Stone's inventory and began selling it even though plaintiff had

a security interest in this property. On the other hand, Beltra Jr. asserted that he bought the ceramic tile from plaintiff and, therefore, defendants had every right to dispose of these materials in any way they wished.

When, as here, the determination of material disputed facts depends primarily on credibility evaluations, summary judgment should not be granted. Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011). Therefore, we affirm the trial judge's denial of defendants' motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2984-15T4