**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4535-16T3

IN THE MATTER OF THE WILL OF
E. WARREN BRADWAY, Deceased.

_____

Submitted May 24, 2018 — Decided June 25, 2018

Before Judges Gilson and Mitterhoff.

On appeal from Superior Court of New Jersey,
Chancery Division, Probate Part, Camden
County, Docket No. CP-0116-2016.

Cronin Trial Lawyers, attorneys for
appellant/cross-respondent Marc A. Coleman
(Joseph D. Cronin, on the briefs).

Cozen O'Connor, PC, attorneys for respondent/
cross-appellant the Estate of E. Warren
Bradway (John P. Johnson, Jr., and Mark A.
Lazaroff, on the brief).

PER CURIAM

This appeal arises out of a dispute concerning a holographic

codicil to a will, written with the blood of the decedent, E.

Warren Bradway. Defendant Marc Coleman appeals from a June 2,

2017 judgment admitting Bradway's will and codicil to probate, and

naming Bradway's partner, Kirston Baylock, executor of Bradway's

estate. The estate cross-appeals from an August 15, 2017 order

denying its motion for sanctions and attorney's fees. We affirm the judgment because there was clear and convincing evidence that the codicil was intended to alter Bradway's will. We affirm the order because we discern no abuse of discretion in the denial of sanctions and fees.

I.

From 1997 to 2004, Bradway and Coleman were in a long-term relationship. During that time, they lived together and filed documents with the Philadelphia Commission on Human Relations recognizing their relationship as life partners.

In a last will and testament, executed on June 28, 2001 (2001 Will), Bradway named Coleman as his primary beneficiary and executor of his estate. The 2001 Will was typed, signed by Bradway, and witnessed by three individuals, whose signatures were attested to by a notary. The 2001 Will replaced Bradway's first will, which he executed in February 1977.

In 2004, Bradway and Coleman ended their relationship. Bradway moved out of the home he had shared with Coleman in Philadelphia. Thereafter, both Bradway and Coleman entered into new relationships with new partners. In January 2006, Coleman filed a certified life partnership termination statement with the Philadelphia Commission on Human Relations, officially severing his relationship with Bradway.

In September 2004, Bradway began a committed relationship with Baylock. On January 11, 2006, the same day that Coleman officially terminated his life partnership with Bradway, Bradway drafted a one-page handwritten codicil to his 2001 Will. The codicil named Baylock as Bradway's primary beneficiary and executor, by directing that all references to Coleman in the 2001 Will be replaced with Baylock's name. Bradway drafted the codicil using his own blood as ink.

Baylock certified and testified that Bradway showed him the codicil in January 2006, and explained the purpose of the codicil. Baylock also testified that Bradway showed him the 2001 Will and showed him that he was storing both the 2001 Will and the codicil in a filing cabinet.

In 2011, Bradway moved out of his home in Philadelphia and began living in Baylock's home in New Jersey. Bradway died unexpectedly in April 2016. Baylock testified that he found Bradway's 2001 Will and codicil in the filing cabinet, which Bradway had moved into Baylock's home when they started living together in 2011.

After their relationship ended in 2004, Bradway and Coleman had limited contact with each other. They did, however, resolve a dispute concerning the closing of a bed and breakfast they had operated in Philadelphia. Ultimately, a Pennsylvania court ruled

3                                          A-4535-16T3

that Coleman had agreed to pay Bradway $95,500 for his share of the business, and that as of 2012, Coleman still owed Bradway $76,000 plus interest. In his codicil, Bradway directed that that debt from Coleman "be in one-half measure forgiven."

In May 2016, the estate filed an action in the Chancery Division to admit Bradway's 2001 Will and codicil to probate. Coleman filed an answer and counterclaim, contesting the validity of the codicil. Thereafter, the parties engaged in discovery, including the production of reports from four experts who examined and analyzed the DNA and handwriting on the codicil.

Following the completion of discovery, the Chancery court conducted a bench trial in May 2017. During the first two days of trial, all four experts testified: Dr. Julie Heinig, the estate's DNA expert; Khody Detwiler, the estate's handwriting expert; Dr. Megan Shaffer MacKenzie, Coleman's DNA expert; and Robert Baier, Coleman's handwriting expert.

The DNA experts did not have a DNA sample from Bradway. Accordingly, their analysis and opinions were based on DNA extracted from the blood on the codicil as compared to DNA samples provided by Bradway's two brothers. Dr. Heinig testified that the codicil was written using blood, and opined that the blood had a 99.9999 percent probability of coming from a full-sibling of Bradway's brothers. Dr. MacKenzie also confirmed that the codicil

was written using blood. She opined that the DNA in the body of the codicil reflected "mixed-source profiles" that came from more than one contributor. She ultimately acknowledged, however, that the major contributor of the DNA was a full-sibling of Bradway's brothers, and that the mixed-source profiles may have been caused by transfer DNA left by others who handled the codicil prior to her analysis. Dr. MacKenzie also acknowledged that her lab had used all of the blood from the signature line on the codicil to analyze the DNA.

Both handwriting experts, Detwiler and Baier, opined that the handwriting in the body of the codicil was Bradway's handwriting. Detwiler also opined that the signature on the codicil was Bradway's authentic signature and that the signature had not been made using "autopen." Baier opined that the signature on the codicil was in Bradway's handwriting, but stated that he could not rule out that the signature had been placed there by a "robotic machine" or "cut-and-paste."

After Coleman's experts finished testifying, the estate moved for a directed verdict. The estate argued that both DNA experts agreed that the body of the codicil was written in the blood of a full-sibling of Bradway's brothers. Accordingly, Bradway was the only possible source of the blood on the codicil. The estate also argued that the handwriting experts agreed that the body of the

codicil was in Bradway's handwriting and that any argument concerning the signature was not relevant because Coleman's own DNA expert acknowledged that the signature was written in the blood of a paternal relative of Bradway's brothers.

Coleman opposed the motion contending that it was premature because he had additional witnesses. In that regard, Coleman argued that he was prepared to call two witnesses who would testify that at the time of Bradway's death there was no signature on the codicil. Thus, Coleman contended that Baylock may have placed the signature on the codicil after Bradway's death.

The trial judge granted the estate's motion, reasoning that there was clear and convincing evidence that Bradway intended the codicil to alter his 2001 Will. Based on the testimony from both DNA experts, the court found that the codicil was written in Bradway's own blood. The court then reasoned that even without a signature, the handwriting and content of the codicil established Bradway's intent to alter his 2001 Will. In that regard, the court analyzed the codicil and found several identifiers that clearly and convincingly established Bradway's intent to alter his 2001 Will.

The court then concluded that the codicil was valid under N.J.S.A. 3B:3-3. Accordingly, on June 2, 2017, the trial court entered an order of judgment admitting the 2001 Will and codicil

to probate and appointing Baylock as the executor of Bradway's estate.[1]

Thereafter, the estate filed a motion for sanctions and attorney's fees against Coleman and his counsel. In making that motion, the estate relied on Rule 1:4-8 and N.J.S.A. 2A:15-59.1, which allow for the imposition of sanctions and attorney's fees against a party and counsel who pursue frivolous litigation. The court heard oral arguments on August 11, 2017, and on August 15, 2017, it issued an order denying that motion. The court explained that it did not find Coleman's pursuit of the litigation to be

---

[1] Prior to trial, a dispute arose concerning two missing coin collections: one collection worth approximately $400,000, and another worth approximately $4000. The estate contended that Bradway's brothers had taken the coin collections, which belonged in Bradway's estate. Bradway's brothers contended that they had only taken the $4000 coin collection, which belonged to their mother and did not belong in Bradway's estate. In October 2016, the court held a teleconference with the parties and advised them that it was severing the dispute concerning the $400,000 coin collection from the probate action, because any alleged theft was a criminal matter to be handled by the police. The court also advised the parties that the question of whether the $4000 coin collection should be included in Bradway's estate would be addressed after the probate matter was decided. On October 19, 2016, the court entered an order allowing Bradway's brothers to retain possession of the $4000 coin collection pending the outcome of the probate matter, but directed the brothers not to dissipate that asset. Ultimately, the estate withdrew its motion concerning the $4000 coin collection. Baylock filed a police report concerning the missing $400,000 coin collection, but that issue was not addressed or decided during the probate matter and, therefore, is not before us on appeal.

frivolous because Coleman had taken reasonable positions in light of the "eccentric" nature of Bradway's preparation of the codicil using his own blood.

## II.

Coleman now appeals from the January 2, 2017 judgment.[2] The estate cross-appeals from the August 15, 2017 order denying its motion for sanctions and attorney's fees. We will address the appeal and cross-appeal in turn.

### A. Coleman's Appeal

On appeal, Coleman argues that the trial court erred by: (1) prematurely granting a directed verdict before he submitted all of his evidence; and (2) not viewing the evidence in the light most favorable to him in deciding the estate's motion for a directed verdict. In support of these arguments, Coleman states that he was prepared to call two witnesses who would have testified that Bradway's signature was not on the codicil at the time of his death. Coleman then argues that there was not clear and convincing evidence that Bradway intended the codicil to alter his 2001 Will. We disagree and affirm.

---

[2] Coleman initially filed a notice of appeal before the trial court ruled on the estate's motion for sanctions and fees. Thereafter, Coleman withdrew that initial notice of appeal and reinstated it after the trial court entered the August 15, 2017 final order.

A-4535-16T3

We conduct a de novo review of a directed verdict, using the same standard as the trial court. Akhtar v. JDN Props. at Florham Park, LLC, 439 N.J. Super. 391, 403 (App. Div. 2015). Accordingly, we "must accept as true all evidence that supports the non-moving party's position and all favorable legitimate inferences therefrom to determine whether the moving party is entitled to judgment as a matter of law." Ibid. (quoting Dolson v. Anastasia, 55 N.J. 2, 5 (1969)).

In reviewing evidence rulings, however, we use an abuse of discretion standard. See Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010). ("Evidentiary decisions are reviewed under the abuse of discretion standard because . . . the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion.")

In a probate matter, the court's role is "to ascertain and give effect to the probable intention of the testator." Fid. Union Tr. v. Robert, 36 N.J. 561, 564 (1962); In re Prob. of Will & Codicil of Macool, 416 N.J. Super. 298, 307 (App. Div. 2010). In so doing, the court must "look to the language of the will to determine if the testator expressed an intent as to how the property should be distributed." In re Estate of Hope, 390 N.J. Super. 533, 539 (App. Div. 2007).

Writings intended to be wills are governed by statutory provisions. See N.J.S.A. 3B:3-2 to -3. N.J.S.A. 3B:3-2 addresses the technical requirements for wills and describes two types of wills: the traditional will, N.J.S.A. 3B:3-2(a), and the holographic will, N.J.S.A. 3B:3-2(b). Both of those subsections authorize wills that are in writing and signed by the testator. Macool, 416 N.J. Super. at 311.

N.J.S.A. 3B:3-3 addresses a form of testamentary document that "was not executed in compliance with N.J.S.A. 3B:3-2." It provides:

> Although a document or writing added upon a document was not executed in compliance with [N.J.S.A.] 3B:3-2, the document or writing is treated as if it had been executed in compliance with [N.J.S.A.] 3B:3-2 if the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute: (1) the decedent's will; (2) a partial or complete revocation of the will; (3) an addition to or an alteration of the will; or (4) a partial or complete revival of his formerly revoked will or of a formerly revoked portion of the will.
>
> [N.J.S.A. 3B:3-3.]

To be recognized as a will or a codicil under N.J.S.A. 3B:3-3, the document or writing need not be signed by the testator. Macool, 416 N.J. Super. at 311.

In granting the directed verdict to the estate, the trial court did not rely on N.J.S.A. 3B:3-2. Instead, the court accepted Coleman's position that the codicil was unsigned at the time of Bradway's death. Thus, the court applied N.J.S.A. 3B:3-3, and focused on whether there was clear and convincing evidence in the body of the codicil to establish that Bradway intended to alter his 2001 Will. We also look to N.J.S.A. 3B:3-3.

Here, the handwriting experts agreed that the body of the codicil was written in Bradway's handwriting. Thus, there was clear and convincing evidence that Bradway wrote the codicil. Indeed, on this appeal Coleman "concedes that the body of the codicil in question was written by Mr. Bradway." The question under N.J.S.A. 3B:3-3 then becomes whether there is clear and convincing evidence that Bradway intended the codicil to alter his 2001 Will.

We agree with the trial court that evidence of Bradway's clear and convincing intent is established by the codicil itself. First, the codicil uses language showing a clear intent to be a freely attested to "codicil." In that regard, the codicil states:

> In the Name of God, Amen
>
> This codicil drawn by me on 11 January 2006 and transcribed in mine own hand — I of sound and disposing mind and memory, of my own free

> will and volition devoid of any external
> influence that may be contrary to my wishes
> amend my last will & testament bearing the
> date of 28 June 2001 ----

Second, the codicil has at least four identifiers that clearly and convincingly establish that Bradway intended to alter his 2001 Will. The codicil: (1) states that it is Bradway's "wish[]" to "amend" his 2001 Will; (2) references his former partner, "Mark Albert Coleman"; (3) "directs" that any references to Coleman in the 2001 Will be replaced with his current partner, "Kirston John Baylock"; and (4) references the debt Coleman owed to him from the home they had operated as a bed and breakfast at "1203 Pine Street, Philadelphia City and County within the Commonwealth of Pennsylvania[.]"

Finally, that the codicil was prepared using Bradway's own blood adds support to the other clear and convincing evidence that Bradway intended the codicil to alter his 2001 Will. All of the experts agreed that the body of the codicil was written in blood that came from a full-sibling of Bradway's brothers. The estate's expert opined that the codicil was written in Bradway's blood. Coleman's DNA expert testified that the blood was not from either of Bradway's two known brothers — leaving Bradway as the only logical source of the blood.

Coleman contends that the evidence was not clear and convincing because there was a dispute over whether Bradway had signed the codicil before his death. That contention is not relevant under N.J.S.A. 3B:3-3, because a signature is not necessary. Moreover, that contention does not undermine the clear and convincing evidence of Bradway's intent to write the codicil as an alteration of his 2001 Will. Even without his signature, we have Bradway's undisputed handwritten intentions clearly and convincingly expressed in the body of the codicil.

There was also no error in the trial court deciding the directed verdict before Coleman finished presenting his full case. Coleman represented that his remaining evidence would be testimony that the codicil was not signed at the time of Bradway's death. As already explained, the lack of Bradway's signature does not undercut the clear and convincing evidence of Bradway's intent as expressed in the codicil which he indisputably wrote. Moreover, in deciding the estate's motion for a directed verdict, the trial court accepted the proffered testimony that the codicil was unsigned at the time of Bradway's death. Accordingly, Coleman was not prejudiced by the court's decision to address the estate's motion before hearing that testimony.

Normally, a motion for a directed verdict "may be made by a party either at the close of all the evidence or at the close of

the evidence by an opponent." R. 4:4-1. The language of the rule, however, does not prohibit a motion from being made at another time. Thus, the rule states when a party "may" make a motion for judgment. Here, we find no abuse of discretion in the trial court's decision not to hear testimony that would have only gone to the alleged lack of Bradway's signature on the codicil at the time of his death.

In short, the record developed at trial established clear and convincing evidence that Bradway intended the codicil to alter his 2001 Will. Accordingly, the codicil was properly admitted for probate in accordance with N.J.S.A. 3B:3-3.

B. The Estate's Cross-Appeal

Under the frivolous litigation statute, N.J.S.A. 2A:15-59.1, the assessment of attorney's fees and sanctions rests within the sound discretion of the trial court. In re Estate of Ehrlich, 427 N.J. Super. 64, 73 (App. Div. 2012). Accordingly, we review such decisions under an abuse of discretion standard. Ibid. (citing United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 390 (App. Div. 2009)).

"A party who prevails in a civil action . . . may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds . . . that a complaint, counterclaim, cross-claim or defense of the non[-]prevailing [party] was frivolous."

14

N.J.S.A. 2A:15-59.1(a)(1). To receive a fee award for frivolous litigation, the prevailing party must show that "the non[-]prevailing party either brought the claim in bad faith for harassment, delay, or malicious injury; or 'knew, or should have known that the complaint [or] counterclaim . . . was without [any reasonable] basis in law or equity . . . .'" Ehrlich, 427 N.J. Super. at 77 (quoting N.J.S.A. 2A:15-59.1(b)).

In addition, an attorney may be sanctioned for asserting frivolous claims on behalf of a client. R. 1:4-8. A claim is considered frivolous when "no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable." First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007). Even when some allegations are later determined to lack merit, however, a complaint is not rendered frivolous if it also contains non-frivolous claims. Ehrlich, 427 N.J. Super. at 77.

In denying the estate's motion, the court found that Coleman and his counsel asserted legitimate claims regarding Bradway's intent to alter his 2001 Will. We discern no abuse of discretion in that decision and, accordingly, we affirm the order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4535-16T3