NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

```
-------------------------------------------------------x
GREGORY GRISHAYEV, MICHAEL          :
TOLMACH AND EONSMOKE, LLC,          :    TAX COURT OF NEW JERSEY
                                    :    DOCKET NO.:  006926-2022
        Plaintiff,                  :
                                    :
        v.                          :
                                    :
DIRECTOR, DIVISION OF TAXATION,     :
                                    :
        Defendant.                  :
                                    :
-------------------------------------------------------x
```

Decided:  June 27, 2024.

Mark A. Kriegel, for plaintiff (Law Office of Mark A. Kriegel, LLC).

Michelline Capistrano Foster, Deputy Attorney General for defendant (Matthew S. Platkin, Attorney General of New Jersey, attorney).

CIMINO, J.T.C.

Plaintiff, Eonsmoke, LLC, is a distributor of liquid nicotine.  The Director initiated an audit.  New Jersey assesses a ten cents per milliliter tax on the in-state sale or use of liquid nicotine used in prefilled electronic cigarette cartridges and disposable devices.  After receiving notification from the United States Food and Drug Administration (FDA) that it could no longer sell its products, Eonsmoke asserts it transferred 4.26 million milliliters of product to a waste hauler for destruction.  With disputed issues of fact, a trial is required.

-1-

Eonsmoke distributed electronic cigarette cartridges and disposable devices. The cartridges are compatible with an electronic cigarette manufactured by JUUL, the market leader. JUUL Labs Inc. v. 4X PODS (JUUL I), 439 F. Supp.3d 341, 345 (D.N.J. 2020). Juul developed a device with an insertable cartridge that can hold flavorized liquid nicotine. Ibid. Once exhausted, a user switches out the cartridge. Ibid. In this rapidly growing market, entities such as Eonsmoke manufactured compatible cartridges. Id. at 346. Eonsmoke's sales were $2.3 million in 2017, $30 million in 2018, and $90 million in 2019. JUUL Labs Inc. v. 4X PODS (JUUL II), 509 F. Supp.3d 52, 60 (D.N.J. 2020). Eonsmoke's success drew the attention of Juul, who filed suit in October 2018 for trademark infringement. JUUL I, 439 F. Supp.3d at 347.

The United States Food and Drug Administration (FDA) informed Eonsmoke in October 2019 that it could no longer sell its products. The FDA gave Eonsmoke fifteen working days to submit a corrective action plan indicating when sale or distribution stopped.

Then-counsel for Eonsmoke informed the FDA on November 18, 2019, that Eonsmoke ceased the domestic import of the products at issue. Counsel further informed the FDA on December 12, 2019, that "Eonsmoke has already ceased the import, sale and distribution of all the listed products. All of the listed Eonsmoke

Pods, 4X Pods, Eonsmoke Disposables, Eonsmoke E-liquids and Eonsmoke Pod Devices have been discontinued and removed from distribution."

By February 7, 2020, the Director noted a massive decrease in Eonsmoke's inventory. The federal court entered an order on February 13, 2020, in the JUUL trademark suit requiring Eonsmoke to quarterly provide its bank statements and cancelled checks to the court. JUUL I, 439 F. Supp.3d at 361. The court determined Eonsmoke was "slow-walking discovery" and "clearly expressed intent to move or conceal assets."[1] Id. at 360, 361. Eonsmoke advised the Director in late February that it discarded nicotine products.

Eonsmoke asserted to the federal court in the JUUL matter that it was no longer in business as of April 2020. JUUL II, 509 F. Supp.3d at 62. However, Eonsmoke's tobacco tax returns show April through August product purchases of 900,000 milliliters and sales of 500,000 milliliters.[2] On December 22, 2020, the federal court in the JUUL suit froze $20 million of Eonsmoke's assets. Id. at 79. The basis for the freeze was the "clearly expressed intent [to not pay any judgment], combined with additional consumption or movement of assets, and Eonsmoke's defunct status . . . ." Id. at 77.

---

[1] The court is not necessarily accepting the findings of the federal court at this point. However, the parties may want to address the relevant findings of the federal court at trial.

[2] No sales or purchases were reported for June, July, or August of 2020.

In an apparent attempt to reduce its audit liability, plaintiff sent two emails to the Director claiming that it destroyed 4 million milliliters of its product in January 2020, and a smaller amount of 260,000 milliliters in August 2020.

One of the two principals of Eonsmoke sent the first email on December 16, 2020, asserting Eonsmoke destroyed 4 million milliliters in January 2020. As proof of such disposal, the plaintiff produced an estimate from "1-800-GOT-JUNK?" for $21,325. As to the August 2020 asserted destruction of 260,000 milliliters, Eonsmoke provided an invoice from Pinto Service, Inc. for a 30-yard roll-off dumpster for $720, an invoice from Affordable Cleanouts for $5,665 and pictures of boxes.

The other principal of Eonsmoke sent a second email as to destruction on April 4, 2021, with different proofs. Eonsmoke produced two cancelled checks to A1 Affordable Cleanouts dated February 4th and February 13th totaling $29,799 and pictures of boxes as to the asserted January 2020 destruction. It further produced an invoice and credit card receipt from Affordable Cleanouts (instead of A1 Affordable Cleanouts) for $5,665 and pictures of boxes as to the asserted August 2020 destruction.

Notably, Eonsmoke's counsel wrote to the FDA on February 11, 2020. Counsel indicated that on February 4, 2020, Eonsmoke transferred all the products referenced in the October 2019 FDA letter to 1-800-Got-Junk for disposal.

However, the August 2020 destruction tallies in the two emails includes product previously identified in the October 2019 FDA letter.

As part of the audit, the Director selected June 2019 as the sample month for purpose of extrapolation to later months. The Director performed a comprehensive accounting of Eonsmoke's sales and revenues for June 2019. The Director found taxable sales, which were Eonsmoke's in-state sales, to be approximately 500,000 milliliters per month. The Director found non-taxable sales, which were Eonsmoke's out-of-state sales, totaled nearly $6 million. Based upon the invoices in the record, the liquid nicotine sold on average for $2 per milliliter. This works out to be approximately 3 million milliliters of non-taxable out-of-state sales per month.

The Director spotted product on the warehouse shelves through March 5, 2020. However, the Director noted that the number of employees as well as the inventory dwindled significantly. The Director did not conduct site visits after March 5, 2020, because of COVID-19 restrictions.[3] The Director only indicated sales of 500,000 milliliters per month through March. The Director does not

---

[3] On March 9, 2020, the Governor issued a state of emergency due to the outbreak of the COVID-19 virus. Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a)-50 (Apr. 6, 2020). The Governor entered subsequent orders regarding social distancing and staying at home. Exec. Order No. 104 (Mar. 16, 2020) ), 52 N.J.R. 550(a)-52 (Apr. 6, 2020) (social distancing); Exec. Order No. 107 (Mar. 21, 2020) ), 52 N.J.R. 554(a)-56 (Apr. 6, 2020) (stay at home).

concede Eonsmoke transferred the product to a waste hauler for destruction. The Director further asserts that even if Eonsmoke transferred the product for destruction, the product is still taxable under the "use" provisions of the statute.

This matter comes to this court on cross-motions for summary judgment. Summary judgment provides an expeditious and efficient method of disposing of matters. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 530, 540 (1995). However, summary judgment is not an appropriate method of disposing of a matter if there are disputed issues of material fact requiring a credibility determination. Ibid.

The factual record is not settled as to whether Eonsmoke transferred the product for destruction or did something else.

As plainly stated by the Appellate Division:

> Any issues of credibility must be left to the finder of fact. That is so even where a witness's testimony is uncontradicted, as long as, when considering the testimony in the context of the record, persons of reason and fairness may entertain differing views as to its truth. Summary judgment should be denied unless the right thereto appears so clearly as to leave no room for controversy.
>
> [Akhtar v. JDN Props. At Florham Park, LLC, 439 N.J. Super. 391, 399 (App. Div. 2015) (citations omitted).]

As said long ago by our Supreme Court "[w]here men of reason and fairness may entertain differing views as to the truth of testimony, whether it be

uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the [trier of fact]." Ferdinand v. Agricultural Ins. Co., 22 N.J. 482, 494 (1956). "[A] trier of fact 'is free to weigh the evidence and to reject the testimony of a witness, even though not directly contradicted, when it contains inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence excite suspicion as to its truth.'" D'Amato by McPherson v. D'Amato, 305 N.J. Super. 109, 115 (App. Div. 1997) (citing In re Estate of Perrone, 5 N.J. 514, 521-22 (1950)).

Only Eonsmoke presents evidence to the court as to destruction. While not disputed, the court is not bound to accept the evidence as true. Considering the varying renditions of destruction and when business ceased, the opportunity to evaluate the credibility of Eonsmoke's witnesses would be helpful. Maybe there is a way to mesh together the scattered facts presented by Eonsmoke; maybe there is not.

In the event the court finds Eonsmoke destroyed the product, there is still the legal issue of whether such destruction constitutes taxable use. The Tobacco and Vapor Products Tax Act not only taxes sales but use as well. N.J.S.A. 54:40B-3.2.

"'Use' means the exercise of any right or power incidental to the ownership of a tobacco product, including a sale at retail." [4] N.J.S.A. 54:40B-2.

Depending on perspective, one can narrowly or broadly interpret "use." Broadly speaking, "any right or power incidental to the ownership" may very well encompass the power to destroy. Narrowly speaking, the language "of a tobacco product" may serve to limit "any right or power" to those typically associated with tobacco products such as smoking, chewing, sniffing, and inhaling.[5]

In deciding to apply a narrow or broad approach, the court will consider the applicability of this court's interpretation affirmed by the Appellate Division of a similar definition of "use" in the cigarette tax. See Supermarkets Gen. Corp. v. Dir., Div. of Tax'n, 4 N.J. Tax 431 (Tax 1982), aff'd o.b., 6 N.J. Tax 252 (App. Div. 1983) (interpreting cigarette "possession for sale or use" and "use"). See also N.J.S.A. 54:40A-2 (defining cigarette "use"). In particular, the court will determine if the holding of Supermarkets General applies due to the similarity of the items taxed, or does not apply since the cigarette tax focusses on possession instead of a taxable event (i.e., sale, use or distribution) which is the focus of the liquid nicotine tax.

---

[4] The rate of taxation is ten cents per milliliter. N.J.S.A. 54:40B-3.2.

[5] On the other hand, "of a tobacco product" may merely describe the chattel over which a "right or power" can be exercised.

The court is reluctant to resolve this thorny legal issue without a well-settled factual record. For if the court does not find destruction, the court does not have to address the issue. The court should not decide a case based upon facts which are undeveloped or uncertain. Borough of Franklin v. Smith, 466 N.J. Super. 487, 500 (App. Div. 2021).

If the court does not find destruction of the product, the case does not end. Without destruction, the product was either sold or distributed.[6] "'Sale' means any sale, transfer, exchange, barter, or gift, in any manner or by any means whatsoever." N.J.S.A. 54:40B-2. However, only in-state sales or distribution are taxed. N.J.S.A. 54:40B-3.2(a).

The question is whether Eonsmoke needs to provide proof of out-of-state sales or distribution to avoid taxation of all 4.26 million milliliters. This question is tempered by the Director's comprehensive audit finding of in-state sales of only 500,000 milliliters out of a total of 3.5 million milliliters sold every month.

While Eonsmoke may want to apportion sales based upon the Director's audit, it may have to take the bitter with the sweet. The sweet is that only a portion of the sales are in-state and thus taxable. The bitter is the audit pegs monthly taxable in-state sales at 500,000 milliliters. The Director only indicated sales through March

---

[6] For completeness, the product could be found to still exist in inventory. However, that would require production of the product in inventory. Also, the product could have been "used" in some way.

2020 because facility inspections stopped due to COVID-19 restrictions. There is nothing in the record at this point indicating why these sales figures should not continue through the August 2020 audit period. Accepting the Director's audit quantity of 500,000 taxable milliliters per month for April through August totals 2.5 million milliliters. Notably, there are unaddressed questions regarding the accuracy of Eonsmoke's records when it shows April through August product purchases of 900,000 milliliters, sales of 500,000 milliliters and a final destruction of only 260,000 milliliters.

In summary, the court is reluctant to opine on this matter without a more established and well-settled record. The court denies both cross-motions for summary judgment.