**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1395-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

IBN MUHAMMAD, a/k/a RAFI
MUHAMAD, ABDUR-RAFI
MUHAMMAD, RAFI MUHAMMAD,
ALI MUHAMMAD, and ABDUR
MUHAMMAD,

    Defendant-Appellant.

_____

Submitted November 20, 2019 – Decided December 3, 2019

Before Judges Haas and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 08-09-2743.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew Robert Burroughs, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Lucille M.

Rosano, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ibn Muhammad[1] appeals from the September 20, 2018 order denying his petition for post-conviction relief (PCR). We affirm, substantially for the reasons set forth in Judge Siobhan A. Teare's cogent written opinion.

We previously recited the underlying facts in this matter in opinions stemming from defendant's direct appeal and his appeal of the denial of his initial PCR petition. State v. Muhammad, No. A-5475-10 (App. Div. June 28, 2013), certif. denied, 218 N.J. 275 (2014); State v. Muhammad, No. A-2429-15 (App. Div. Mar. 9, 2017). We need only summarize the essential facts here.

Defendant was charged with numerous offenses arising out of three different incidents: a September 6, 2007 shooting involving the exchange of gunfire with an individual named Jeffrey Christopher; the murder of Jeffrey Christopher on January 12, 2008; and an attempted witness tampering on February 4, 2008.

At defendant's jury trial in 2010, four witnesses testified and identified defendant as the culprit in all three incidents. The jury acquitted defendant of

---

[1] Defendant also is referenced in the record as Ibn Muhammed.

all charges arising from the September 6, 2007 incident, but convicted him of the offenses flowing from the other two incidents. The trial judge sentenced defendant on February 1, 2011 to life in prison with thirty years of parole ineligibility on the murder charge, a consecutive ten-year term on the witness tampering charge, and to concurrent five- and ten-year terms on weapons offenses.

As already mentioned, defendant filed a direct appeal, and we affirmed his convictions in 2013. We remanded the matter to the trial court only to correct the judgment of conviction to reflect that defendant was required to serve [sixty-three] years and nine months without parole under the No Early Release Act, N.J.S.A. 2C:43-7.2. Muhammad, No. A-5475-10 (slip op. at 20-21).

Defendant then filed a PCR petition on August 20, 2014. His request for relief was denied without an evidentiary hearing. We reversed so the trial court could conduct an evidentiary hearing to address defendant's alibi claim, as well as his assertion that trial counsel failed to properly advise him regarding his right to testify. Muhammad, No. A-2429-15 (slip op. at 13).

Judge Teare conducted an evidentiary hearing on August 13, 2018. Defendant provided testimony at this hearing, as did his cousin, his brother and

the mother of his child. Defendant's trial attorney, Sebastian Bio, Esq., also testified at this hearing as the State's only witness.

Bio confirmed he had spoken with defendant many times before trial about the State's plea offers, his trial strategy and defendant's right to testify. Bio noted he had a discussion with defendant that "bordered on begging" his client to accept the State's plea offer. Bio also affirmed no one, including defendant, approached him about an alibi claim or about persons willing to testify on defendant's behalf.

Bio was questioned about defendant having an alibi defense for the murder charge based on his playing basketball with his brother and cousin. Bio insisted he had not heard of this defense until the evidentiary hearing. Bio added "I would have jumped all over that. I would have been more than happy to hear from . . . alibi witnesses." Bio further affirmed there were witnesses inculpating defendant on all three incidents, so Bio approached the case as an "identification" case.

Bio also confirmed he had dissuaded defendant from testifying at trial, due to defendant's prior convictions. When Bio was asked if a strategic decision had been made regarding defendant remaining silent at trial, Bio responded, "[a]bsolutely."

A-1395-18T4

Judge Teare determined Bio was "calm and answered all questions directly on both direct and cross-examination. He kept good eye contact with the attorneys and . . . his testimony was credible." We note that Bio's testimony also is supported by the trial record. Indeed, the record demonstrates that on December 8, 2010, defendant was questioned by the trial judge under oath regarding whether he would testify. The trial judge inquired if defendant's attorney had thoroughly discussed his options about testifying and defendant answered, "I don't wish to testify." The trial court pressed him further and repeated, "have you discussed that thoroughly with [your attorney]?" Defendant replied, "[y]es."

Judge Teare also considered the testimony of Karess Daniels, the mother of defendant's child, at the evidentiary hearing. Daniels confirmed that on the day of the murder, defendant left her home around 9:15 a.m. to play basketball with his brother. She claimed defendant did not return until about 5:20 p.m. and she did not know his whereabouts once he left her home. She also admitted she never reached out to Bio to inform him defendant had an alibi for the day of the murder. Judge Teare found Daniels' testimony credible.

During the evidentiary hearing, defendant's brother and former co-defendant in this matter, Salahudin Muhammad, also testified he was with

defendant on the day of Christopher's murder. Salahudin Muhammad claimed he and his cousin picked up defendant at Daniels' house at about 9:15-9:30 a.m. and went to play basketball at the YMCA. This witness also stated he tried to talk to Bio about an alibi defense for his brother but the alibi conversation was "nixed off" due to plea discussions between defendant and Bio. Judge Teare found Salahudin Muhammad's testimony "appeared to have been staged."

Damian Scott, defendant's cousin, corroborated Salahudin Muhammad's testimony. Scott advised he picked defendant up at Daniels' home on the day of the murder and headed to the YMCA to play basketball. Additionally, Scott testified that after he and defendant played basketball, they went shopping and picked up something to eat. Scott claimed he then returned defendant to Daniels' home. Further, Scott testified he tried to talk to Bio one time during the trial about defendant's alibi but was ignored. Judge Teare found "little credibility" in Scott's testimony.

Defendant was the final witness to testify at the evidentiary hearing. He, too, affirmed that on the day of the murder, he played basketball with his brother and Scott at the YMCA. Additionally, defendant testified that prior to trial, he told Bio he had three witnesses who could testify on his behalf, and Bio responded he would "look into it." Moreover, defendant stated at the evidentiary

6

hearing that he informed his attorney he wished to testify at trial, but Bio told him it would not be a good idea because he would not be credible due to his history of criminal convictions.

Defendant maintained he saw Bio only twice while Bio represented him and that he and Bio spoke only one time about witnesses who could testify for defendant. At the conclusion of defendant's testimony, Judge Teare stated "[i]t appeared to the court that the defendant was not credible and he was suffering from regret of his convictions. It appeared that he had studied his case and the law surrounding PCRs and tried to formulate his answers to further his ineffective assistance of counsel argument."

Following the evidentiary hearing, Judge Teare denied defendant's PCR petition. On appeal, defendant raises the following arguments:

> THE PCR COURT ERRED WHEN IT FOUND DEFENDANT HAD FAILED TO ESTABLISH A CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> (1) As [d]efendant established that he had informed his attorneys about an alibi defense, the PCR court erred when it denied his [PCR].
>
> (2) As [d]efendant had demonstrated that his attorney failed to explain the possible advantages of testifying at trial and his testimony would have aided his defense, the PCR court erred when it denied his [PCR].

7

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged Strickland test. Strickland v. Washington, 466 U.S. 668 (1984). A defendant asserting such a claim must establish acts or omissions of counsel showing unreasonable professional judgment, and also show that counsel's errors had a prejudicial effect on the trial. State v. Fritz, 105 N.J. 42, 58 (1987).

Here, Judge Teare found Bio demonstrated "an ability at trial that more than satisfies the minimum reasonable standard for effective assistance of counsel." Further, the judge found defendant had not satisfied the second prong of Strickland in that he had not demonstrated how his attorney's actions prejudiced the outcome of defendant's trial.

Credibility is for the factfinder to determine, and therefore we give great deference to the judge's findings. Ferdinand v. Agric. Ins. Co. of Watertown, N.Y., 22 N.J. 482, 492 (1956). After a thorough review of the transcript from the evidentiary hearing, we are satisfied Judge Teare's credibility findings for each witness are amply supported by the record. Moreover, we perceive no basis to disturb her determination that defendant failed to establish ineffectiveness of counsel under the Strickland test and failed to demonstrate he was forced by trial counsel to not testify.

A-1395-18T4

Defendant's remaining arguments lack sufficient merit to warrant discussion in this opinion.  <u>Rule</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1395-18T4